ELIZABETH STIMPSON, administratrix, *vs.* ROBERT E. ACHORN.

Suffolk.   January 11, 1893. — March 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Conversion — Gift from Husband to Wife — Title to Personal Property — Evidence — Fraud — Estoppel.*

Even if a gift of personal property from a husband to his wife, considered as an attempt to make the same her sole and separate property, is invalid both under the Pub. Sts. c. 147, § 3, and at common law, yet, as administratrix of his estate, she has a good title thereto.

In an action by an administratrix for the conversion of the intestate's personal property, declarations of the intestate, who was the husband of the plaintiff, that he had put all his property out of his hands, it not being suggested that the statement referred to any other disposition of personal estate than a gift to his wife, was held rightly excluded.

In an action by an administratrix for the conversion of the intestate's personal property there was evidence of an agreement to sell and of a subsequent bill of sale, which did not purport to convey the plaintiff's property, but only that of others located in the place where the plaintiff's was stored. *Held,* that the judge rightly ruled that there was no evidence to warrant a verdict for the defendant.

While a principal may be bound by the fraudulent conduct of an agent while acting for him in making a sale, he will not be affected by the agent's fraud in selling the property of another person and pretending at the same time that the principal's property belonged to that other, and was included in the sale; nor can the principal be estopped on the ground that, while having authority to represent the principal in selling his goods, the agent stood by and permitted the principal's goods to be sold and paid for as the property of another.

TORT, for the conversion of a lot of furniture, etc., the contents of a hotel in Mattapoisett.

At the trial in the Superior Court, before *Bond,* J., it ap-

peared in evidence that William H. Stimpson, the plaintiff's intestate, who died about January 1, 1888, had owned the property in question, and that the plaintiff herself and George R. Stimpson, her adopted son, who, it appeared, was her fully authorized agent to manage her property and to sell the personal property in question, were the only witnesses as to the title of the plaintiff, and testified that William H. Stimpson did not, to their knowledge, sell this property during his lifetime. It also appeared that the hotel in question, and the land on which it stood, had belonged to William H. Stimpson, and that he had given his wife, Elizabeth Stimpson, the furniture the subject matter of this suit, during his lifetime, not by any conveyance in writing, or by the agency of or delivery to a third person, but by a verbal gift direct to his wife, and that the plaintiff and George R. and Maria W. Stimpson, his wife, had assumed that such gift was valid, and that Elizabeth Stimpson owned the furniture. It further appeared that Elizabeth was appointed administratrix on or about January 1, 1891, for the purpose of bringing this suit; that the suit was brought in that month; that, by mesne conveyances, the real estate had come into the name of Maria W.; that in the fall of 1890 the real estate was put by Maria W. in the hands of one Nason, an agent, to be sold; that at the same time Nason was authorized (if the plaintiff at that time had power so to authorize) to sell the personal property, the subject of this suit, and that Nason was instructed to sell either the hotel alone or the hotel with the furniture.

It further appeared that George R. Stimpson was the owner of certain articles of furniture within the hotel, to wit, one gas machine, office counters, one common chamber set, and the gas fixtures in the house, as appeared by enclosure in a letter of October 30, 1890, written by George R. Stimpson to the defendant in this action, a copy of which is hereinafter contained; that, in pursuance of such instructions, Nason, on October 7, 1890, made a written contract between Maria W. Stimpson, in her own right, and the defendant, whereby the said Maria agreed to sell the real estate, including the building and stable and "all the personal property in said house belonging to me," full possession to be given at the time of the delivery of the deed, October 17, 1890, "and the bill of sale of all the personal property in

said house"; and that on or about October 23 Maria W. and Nason went to Plymouth, and there delivered to the defendant a deed of the real estate, properly executed by Maria W., and a bill of sale, of which the following is a copy :

" Boston, Oct. 23, 1890. Received of Robert E. Achorn one dollar, in full for the furniture in the Mattapoisett House belonging to me, the same that was included in the sale of said property. George R. Stimpson."

The defendant offered to show by one Bowles, who was called by him as a witness, that William H. Stimpson, the plaintiff's intestate, during his lifetime told Bowles that he (William H. Stimpson) had put all his (William H. Stimpson's) property out of his hands, both real and personal. On the plaintiff's objection the judge excluded the evidence, and the defendant excepted. It was not suggested by the defendant that this statement referred to any other disposition of the personal estate than the gift to the wife, Elizabeth Stimpson. It appeared further that on October 23, 1890, the deeds called for by the agreement were passed, and the cash called for paid at Plymouth ; that at the time there were present Maria W. Stimpson, Nason, and the defendant; and that at the time of signing the agreement and at the time of passing the deeds and the paying the cash the defendant was occupying the real estate, and was in possession of the personal property in question as assignee of a lease by the lessee of the property which had expired or was about to expire. Nason, among other things, testified that in the spring of 1890 he went to Mattapoisett with George R. Stimpson to examine the hotel and furniture ; that George R. Stimpson told him to advertise the property and sell it by private sale, the hotel and furniture ; that he (Nason) supposed that the furniture — now the subject of this suit — belonged to Elizabeth Stimpson in her own right, that during the summer of 1890 he saw the plaintiff at his own office and house a good many times, and had talks with her about the Mattapoisett Hotel and furniture in it, and that she told him to sell the personal property and the real estate, — to sell the personal property with the house ; and that at the time of executing the written agreement on October 7, 1890, the defendant spoke of the personal property, and the words " and the bill of sale of all the personal property in said house " were interlined

in the agreement by him (Nason) and before the agreement was signed. George R. Stimpson testified that the words "and bill of sale of all the personal property in said house," which were inserted in a printed blank in the handwriting of Nason after the words "full possession of the said premises," etc., were not in the agreement when the same was shown to him at some time between October 7 and October 23 by Nason, and that the agreement had at that time been signed by both Nason as agent and by the defendant. Nason further testified, that in Septemtember, 1890, while negotiations for the sale were going on, he reported to George R. Stimpson the defendant's offer of $6,000 for "the hotel property," and that he (Nason) as George R. Stimpson's agent had refused the offer, and then asked for instructions. In reply, George R. Stimpson authorized him (Nason) to sell at $6,500, — "told me to sell the property to Mr. Achorn for $6,500, or, if I could n't do any different, in case I could n't get $6,500, let him (Achorn) split the difference ($6,250), including the furniture."

George R. Stimpson testified that Nason told him that he thought he could get $6,500 for the house without the furniture, and that Nason then asked, "Suppose I could get you $6,000 clear for the house, and my commission above that?" and said, "I will get my commission clear over and above $6,000, and the furniture not to go"; that a question was raised by Nason as to the ownership of the gas fixtures and the gas machine, and that Nason asked Stimpson if he owned any furniture in the house; that Stimpson replied that he did own 'one chamber set, and, to avoid any question, would give a bill of sale of the gas fixtures and the gas machine, and throw in the chamber set, and that Nason afterwards showed him the agreement, and that Stimpson then said, "It is signed for Maria W. Stimpson, and she don't own a cent's worth of furniture"; Nason said, "That don't make any difference to you, does it?" Stimpson replied, "Certainly; it ought to be what I have got." Nason replied that it made no difference. Nason testified, that at the time the papers were passed at Plymouth, a bill of sale, the same as printed above, was delivered to the defendant; that there were then present Maria W. Stimpson, J. L. Nason, and the defendant. Nason's evidence on this point was as follows:

" *Q.* Will you tell us what you said at that time. *A.* I called for the bill of sale of the personal property that I prepared the Saturday previous for them to sign and have at the record office with him. When we went down in the morning, Mrs. Stimpson handed me another bill of sale. It was not the bill of sale that I prepared; it read different. She said Mr. Stimpson prepared it, as he wanted it his way.

" *Q.* What was said in Mr. Achorn's presence? *A.* She read the bill of sale and delivered it to Mr. Achorn in my presence.

" *Q.* What did you say to her there that this bill of sale carried? *A.* The personal property in the house at Mattapoisett that he was already in possession of."

Maria W. Stimpson testified that George R. Stimpson handed her the bill of sale in Boston, and that she handed the same to Nason while on the train travelling to Plymouth, and that the same was handed by said Nason to the defendant without remark.

Maria W. Stimpson further testified that, when the papers were passed, the defendant asked her for a list of the furniture owned by George R. Stimpson and transferred by the bill of sale, and that she promised to send him such list.

The day after papers were passed at Plymouth, George R. Stimpson mailed to the defendant, and the defendant admitted receiving, the following letter :

" Boston, Oct. 24, 1890. Mr. Robert E. Achorn. Dear Sir, Mrs. G. R. Stimpson says you spoke to her regarding list personal property belonging to her or myself in the Mattapoisett House that you purchased. I will send you same soon, and that not belonging to us, Mrs. E. Stimpson, the owner, says may remain, if you desire, until she decides to remove it, or should you be ready to furnish, and it be in your way, let her know and she will immediately remove the same, or she will sell you at appraisal by good parties, if it is such as you want. Yours very resp'fly, Geo. R. Stimpson."

On October 30, 1890, George R. Stimpson mailed, and the defendant received, the following letter:

" Boston, Oct. 30, 1890. Mr. R. E. Achorn. Dear Sir, Please find enclosed list personal property sold to you with Mattapoisett House. Shall be pleased to appraise and sell you, or to

agree on price, or, if you desire it not at all, will have it removed at your order, but please let me know by return mail surely your decision; should I receive no answer, shall expect you desire it taken out, and shall of course immediately remove same. I will confer with my mother, the owner, upon any suggestion you make and let you know as aforesaid. Yours, G. R. Stimpson."

This letter contained the following enclosure:

" Boston, Oct. 30, 1890. List personal property that was in Mattapoisett House belonging to G. R. Stimpson, as per bill of sale given Robert E. Achorn, viz. (see letter Oct. 30, 1890) : 1 gas machine, office counters, 1 common chamber-set; gas fixtures in house. Recvd payment, by sale hotel. G. R. Stimpson."

The defendant made no reply to either of these letters, or to several succeeding. About December 1, George R. Stimpson went to Mattapoisett, and for the first time learned that the defendant claimed to have purchased the furniture at the time of the purchase of the hotel.

At the conclusion of the evidence, the defendant asked the judge to rule as follows: " If the jury find that the plaintiff, either by herself or her agents, knowingly caused or allowed the defendant to believe that, upon the payment by him of the cash agreed upon in the sale of the hotel and the delivery of the deed of the hotel to him, all the personal property belonging to the plaintiff that was there at the time of such payment and delivery in the hotel, should thereupon belong to him, the defendant, and that the defendant while so believing, and while the plaintiff, either by herself or her agents, knowingly caused or allowed him so to believe, paid such cash, and received delivery of said deed, and that the said personal property was, at the time of such payment and delivery, in the defendant's possession, the verdict must be for the defendant."

The judge refused so to rule, and ruled that " the only question for the jury was the assessment of damages."

The jury found for the plaintiff; and the defendant alleged exceptions.

*E. D. Stetson*, for the defendant.

*G. W. Anderson*, for the plaintiff.

KNOWLTON, J.   The plaintiff, as administratrix, had a good
title to the property in question.   The gift from her husband to
her, considered as an attempt to make the furniture her sole
and separate property under our statute, was invalid.   Pub. Sts.
c. 147, § 3.   At common law, such a gift cannot transfer the
property during the lifetime of the husband, and can take effect
after his death only in case it does not interfere with the claims
of creditors, and in case there was a delivery in his lifetime and
a retention of possession by the wife.   The gift is revocable, and,
if the property is subsequently taken back into the possession of
the husband, the wife's right is at an end.   *Spelman* v. *Aldrich*,
126 Mass. 113.   *Fellows* v. *Smith*, 130 Mass. 378.   *Marshall* v.
*Jaquith*, 134 Mass. 138.   In the present case, it does not appear
that there was any delivery to the plaintiff by her husband, or
that she was ever in possession in his lifetime.

The testimony, offered by the defendant, of the declaration
of the plaintiff's intestate, that he had put all his property out
of his hands, it not being suggested that the statement re-
ferred to any other disposition of the personal estate than the
gift to his wife, was immaterial.   It had no tendency to contra-
dict the plaintiff's present contention.

The court rightly ruled that there was no evidence to warrant
a verdict for the defendant.   The agreement to sell, and the
subsequent bill of sale, did not purport to convey the plaintiff's
property, but only that belonging to Maria W. Stimpson and
George R. Stimpson.   It is not contended that the defendant
took any title to this property under those writings.

The contention is that the plaintiff is estopped from claiming
the property because of the conduct of Nason and George R.
Stimpson, her agents, in so acting as to induce the defendant
to believe that he was getting a good title under the writings.
There is no evidence to connect the plaintiff personally with
these transactions, and if we assume that there was evidence
against Nason or George R. Stimpson such as would warrant a
finding of fraud against them, and work an estoppel against the
plaintiff if she were bound by their conduct, the answer to the
defendant's contention is that they were the plaintiff's agents
only to sell her property.   She might be bound by their fraudu-
lent conduct while acting for her in making a sale, but she would

not be affected by their fraud in selling the property of another person, and pretending at the same time that her property belonged to that other and was included in the sale; nor could she be estopped on the ground that, while having authority to represent her in selling her goods, they silently stood by and permitted her goods to be sold and paid for as the property of another. Such an act would not be within their authority, nor done in the transaction of her business. There was nothing disclosed at the trial to interfere with the right of the plaintiff to recover the value of her property.

*Exceptions overruled.*