SPRINGFIELD INSTITUTION FOR SAVINGS *vs.* ALFRED M. COPELAND, administrator, & another.

GERALDINE G. STROUT, administratrix, *vs.* ALFRED M. COPELAND, administrator.

SAME *vs.* SAME & another.

SAME *vs.* SAME & another.

Hampden.    September 27, 1893. — January 6, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Husband and Wife — Title to Bank Deposits and Securities — Inference.*

If a husband, who for several years keeps an account at a national bank in his own name, deposits therein, at different times, with her knowledge and consent, large amounts of money belonging to his wife, who keeps no bank account in her own name, and there is no evidence that he has withdrawn any considerable part of the money so deposited, for her use, up to the time of his death, which precedes hers, or that any of the money deposited by him in that bank was ever his property, the inference will be warranted that she intended neither to give nor to lend to him the money so deposited, but that she permitted it to be deposited in that manner for convenience until it should be invested.

If money is deposited in savings banks in the names of " S. J. and U. M. G., subject to withdrawal by either," and in the names of " S. J. and U. M. G., either to draw whole or part," the two persons named being husband and wife, and the latter surviving the former, and it appears that all but a small sum as to the source of which there is no evidence came from the wife's property, and that the bank-books were kept in a box to which each had a key, the administrator of the wife's estate is entitled, as against the administrator of the husband's estate, to receive the whole amount of the deposits.

The fact that securities standing in the name of a husband or marked with the initial letters of his name were bought by him of a third person with the proceeds of property of his wife, and with her knowledge, will warrant the inference that they were so put in his name with her assent, and with the intention that they should become his property, if they are in the nature of permanent investments, and their value is not so large when compared with the value of the property which she retained as to make such an inference unreasonable, and if other securities which were kept in the box with the securities just named are marked with the initial letters of her name.

FIELD, C. J.    The first suit is a bill of interpleader to determine whether certain sums of money deposited with the Springfield Institution for Savings in the names of " S. J. and U. M. Goodenough, subject to withdrawal by either," amounting to $976.96, with the interest thereon, belong to the estate of Samuel

J. Goodenough or to the estate of Urania M. Goodenough, his wife.

The second suit is a bill in equity, by the administratrix with the will annexed of the estate of Mrs. Goodenough, against the administrator of the estate of Mr. Goodenough, to compel the transfer to the plaintiff of certain shares of stock and of certain bonds standing in the name of Mr. Goodenough, on the ground that they were purchased with the proceeds of the sale of securities belonging to Mrs. Goodenough.

The third suit is a bill in equity, by the administratrix with the will annexed of the estate of Mrs. Goodenough, against the administrator of the estate of Mr. Goodenough and the Springfield Five Cents Savings Bank, to compel the payment to the plaintiff of the sum of $1000, deposited in said savings bank in the names of " S. J. and Urania M. Goodenough, either to draw whole or part," with the interest thereon, on the ground that the money deposited was the property of Mrs. Goodenough.

The fourth suit is a bill in equity, by the administratrix with the will annexed of the estate of Mrs. Goodenough, against the administrator of the estate of Mr. Goodenough and the John Hancock National Bank, to compel an assignment to the plaintiff of the money standing to the credit of Mr. Goodenough on the books of the bank, or to compel the bank to pay the amount to the plaintiff, on the ground that the money, although deposited in the name of Mr. Goodenough, was the money of Mrs. Goodenough.

Mr. Goodenough died intestate on December 28, 1891, and his estate has been represented insolvent.  Mrs. Goodenough died on January 20, 1892, leaving a will which has been duly admitted to probate.  The suits were sent to a master to find the facts, and have been reserved upon his report and an agreed statement of facts.

With the exception of $100 deposited in the Springfield Institution for Savings on August 6, 1884, all the money deposited in both savings banks was drawn by Mr. Goodenough on February 18, 1890, from the deposit in the John Hancock National Bank.  It is found that Mr. Goodenough "kept an account at said John Hancock National Bank in his own name from October, 1883, to the time of his death, December 28, 1891."  On

February 1, 1890, the balance to his credit in this bank was $89.65; and on the morning of February 12, 1890, it was $51.65; afterwards, on the same day, he deposited in this bank $15,093.62, which was the proceeds of a check payable to the order of Mrs. Goodenough, given to her in part payment of the legacy to her contained in the will of Noble Maxwell. On February 18, 1890, Mr. Goodenough also deposited in this bank $360, which, on the finding of the master, must be taken to have been the proceeds of the sale of three shares of Sagadahock Bank stock belonging to Mrs. Goodenough. As we read the master's report and the agreed facts, there is no clear evidence that any of the money deposited with this bank was ever the property of Mr. Goodenough. The greater part in number and amount of the deposits are shown to have been Mrs. Goodenough's property. It simply does not appear whether the other deposits came from his or her property. It is agreed that from February 12, 1890, to the time of his death, he "owned no property of any amount, except his interest in the money and securities in these suits." It is found that there was deposited in this bank about $31,000 between February 1, 1890, and the death of Mr. Goodenough, of which about $24,500 "came from either the income or proceeds of sale of Mrs. Goodenough's property." It is agreed "that prior to February 12, 1890, said Goodenough had deposited in said bank several thousand dollars of money which appears to have come from the legacy of Noble Maxwell; [and] there was no evidence that he had withdrawn any considerable part of the money deposited as aforesaid, for the use of Mrs. Goodenough, up to the time of his death."

The first question is whether it should be inferred that Mrs. Goodenough intended to give to her husband all the moneys deposited in his name with the John Hancock National Bank. The master has found that "apparently they were both conversant with and approved of the management of their respective financial affairs." Mrs. Goodenough kept no bank account in her own name. It appears that they jointly "hired a deposit box in the vault of the Springfield Safe Deposit and Trust Company, . . . each having a key thereto," and that in this box were kept the savings bank books, the certificates of stock, and other securities standing in the name of each.

If the law as declared in *Marshall* v. *Jaquith*, 134 Mass. 138, be applicable to a gift by a wife of her separate property directly to her husband, upon which we express no opinion, the facts in the cases now before us do not show an effectual gift of the money deposited with the John Hancock National Bank, because the husband died before the wife. See *Porter* v. *Wakefield*, 146 Mass. 25; *Stimpson* v. *Achorn*, 158 Mass. 342. In *Jacobs* v. *Hesler*, 113 Mass. 157, it is said: " When a wife with her own hand pays money of her separate property to her husband, there is no presumption that he receives it in trust for her, but the burden is on her to prove the fact. In the absence of such proof, the money must be deemed to have been given to him with the intention that it should be applied to the use or benefit of either or both of them at his discretion." See *Clark* v. *Patterson*, 158 Mass. 388. There are also cases in which the wife has mingled her separate property with that of her husband under such circumstances that she has been held to have lost it, or lost the right to recover it. *Kelly* v. *Drew*, 12 Allen, 107. *McCluskey* v. *Provident Institution for Savings*, 103 Mass. 300. *Bassett* v. *Bassett*, 112 Mass. 99. *Kneil* v. *Egleston*, 140 Mass. 202. *Woodward* v. *Spurr*, 141 Mass. 283.

We think, however, that the most reasonable inference from the facts found or agreed in the cases at bar is that the wife intended neither to give nor to lend to her husband the money which he deposited in his own name in the John Hancock National Bank, but that she permitted it to be deposited in this manner for convenience until it should be invested, with the intention that it might be used for her own benefit or that of her husband. It is evident that the whole of the balance of $748.94 standing to the credit of Mr. Goodenough on the books of the John Hancock National Bank, together with what has heretofore been expended for the use of Mrs. Goodenough, including the deposits in the savings banks, will not make up the amount of her money which is shown to have been deposited in that bank, and that, so far as appears, all the money which remains in that bank is her money unless she has effectually given it to him.

The principles which govern a case of this kind are considered in *In re Hallett's estate*, 13 Ch. D. 696, and in *National Bank* v.

*Insurance Co.* 104 U. S. 54. In the latter case it is said in the opinion that the modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is as follows : " Whether the disposition of it be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If they cannot be identified by reason of the trust money being mingled with that of the trustee, then the *cestui que trust* is entitled to a charge upon the new investment to the extent of the trust money traceable into it ; that there is no distinction between an express trustee and an agent, or bailee, or collector of rents, or anybody else in a fiduciary position ; and that there is no difference between investments in the purchase of lands, or chattels, or bonds, or loans, or moneys deposited in a bank account." See *Farmers & Mechanics' National Bank* v. *King*, 57 Penn. St. 202 ; *Van Alen* v. *American National Bank*, 52 N. Y. 1.

In accordance with this doctrine, we are of opinion that, on the facts found and agreed, there must be a decree for the plaintiff in the fourth case for the whole of the balance in the John Hancock National Bank.

The deposits in the savings banks, one in the names of " S. J. and U. M. Goodenough, subject to withdrawal by either," and the other in the names of " S. J. and Urania M. Goodenough, either to draw whole or part," must be taken to show either an intention on the part of the depositors — the persons named being husband and wife — that the amount deposited, if not withdrawn in the lifetime of both, should belong to the survivor, or the same inference is to be drawn as in the case of the deposit in the John Hancock National Bank. In either view the title now would be in the representative of the wife's estate. See *Draper* v. *Jackson*, 16 Mass. 480 ; *Fisk* v. *Cushman*, 6 Cush. 20 ; *Marshall* v. *Jaquith*, 134 Mass. 138 ; *Phelps* v. *Simons*, 159 Mass. 415. It is plain that all but one hundred dollars came from the property of Mrs. Goodenough. There is no direct evidence who deposited this one hundred dollars, or whose money it was, or where it came from, and the bank-books were kept in the possession of both. It was deposited on August 6, 1884, which was after Mrs. Goodenough began to receive portions of her legacy from the executor of Mr. Maxwell. If any

inference is to be drawn from the facts found by the master, it is that it was the wife's money. The representative of Mr. Goodenough's estate does not offer any evidence tending to show that it was ever his property. As from the form of the deposits the wife after the husband's death could have drawn all the money from each savings bank, and as it was probably all hers originally, we think that in these two suits there must be a decree for the whole amount in favor of the administratrix with the will annexed of the estate of Mrs. Goodenough.

So far as Mr. Goodenough has used her money for his own benefit, with her assent, his estate cannot now be held accountable for it. The most difficult question is whether it is to be inferred or presumed that the securities standing in his name, or marked with the initial letters of his name, which are shown to have been bought with the proceeds of her property were put in his name with her assent, and with the intention that they should become his property. The master has found in effect that she knew of and assented to what was done. On the whole, we think it must be inferred that she assented to the purchase of the securities by him in his name, and, as they were in the nature of permanent investments, that she intended them to be his property. The value of these securities is not so large, when compared with the value of the property which she retained, as to make such an inference unreasonable, and the discrimination shown in marking two of the bonds of the New Hampshire Investment Company "S. J. G." and two "U. M. G." perhaps tends to confirm this conclusion. If the title had been derived directly from her, it may be that the securities would not become the property of his estate, as he did not survive her, and they were not kept in his exclusive possession during their joint lives. But the title was derived from a third person, although the consideration of the purchase came from her property. Such a transaction does not involve any contract between husband and wife, or transfer of title directly from one to the other. If it were shown that these investments were intended to be in trust for her, or that her property was wrongfully used by him in making these investments, or was so used without her assent, the property could be followed, so long as it could be identified, and the securities would be declared to belong to her

estate, but none of these facts appears. The twenty shares of the Boston Investment Company, the ten shares of the Massachusetts Real Estate Company, the two bonds of the New Hampshire Investment Company marked on the back " S. J. G.," and the one share of the New Hampshire Investment Company must, we think, be held to belong to his estate. The two bonds of the New Hampshire Investment Company marked on the back " U. M. G." must be held to belong to her estate.

*Ordered accordingly.*

*H. C. Bliss*, for Geraldine G. Strout.

*A. M. Copeland, pro se.*