*56 OPINION.
Smith:
In these proceedings the petitioners claim the deduction from gross income of 1930 of losses alleged to have been sustained by each of them upon the sale of securities to the other. The respondent has disallowed the losses upon the ground that under the laws of Massachusetts there can be no valid sale of property between husband and wife. We think there is no merit in this position. We so held in a memorandum opinion entered April 20, 1932, in the case of Richard W. Kale, which was affirmed by the United States Circuit Court of Appeals for the First Circuit in Commissioner v. Hale, 67 Fed. (2d) 561. In that case the petitioner claimed the deduction of a loss upon the sale of shares of stock to his wife. The Board and the court allowed the deduction of the loss, the court observing: “ He has sustained an actual loss by the transfer as fully as though he had conveyed it for the same sum to a stranger.” To the same effect is Andrew J. Peters, 28 B.T.A. 976; Anna E. Riley, 29 B.T.A. 160.
A more serious question which is presented by these proceedings is whether the transfers of the wife to the husband and of the husband to the wife, in the circumstances, constituted bona fide sales of securities from which losses were sustained. From the standpoint of the marital community no loss was sustained. The community owned the same property and the same amount of cash after the transfers as before. But husband and wife are not taxed as a community under the income tax laws. Each is liable to income tax upon his or her gains and income. If a bona fide sale is made by husband or wife to the other, the transaction is to be treated in all respects as though it were a transaction with a stranger. Transactions of the character of those here involved invite scrutiny. If not made at a fair market price a question may arise as to whether the sale was bona fide. But in these proceedings the evidence proves that they were made at the market price. The General Capital Corporation was a large corporation. There was an active market for its shares. The sales were made at the quoted price for the shares. The respondent does not question that the sales were at the market price.
There can be no question but that the transactions between the petitioners effected a transfer of title to and possession of the shares. The separate estates of the two petitioners have always been dealt with as separate estates. It is true that the investment cash of the petitioners was kept in the “ J ” account, together with other cash, and it is true that either petitioner could draw checks against the *57 account. But the books of account kept for the two petitioners and for others for whom Dennett handled moneys were kept rigidly separate. At any time the cash in the “ J ” account could be segregated to the several owners. The law of Massachusetts is entirely clear that the money in that account recorded as belonging to either the husband or wife and derived in each case entirely from their sole and separate estates actually was owned by the party thus shown as entitled thereto.
In Duggan v. Wright, 157 Mass. 228; 132 N.E. 159, a husband had turned over to his mother-in-law a check payable to him which he had received from a third party. The mother-in-law made a gift of the check to her daughter, the wife. Before the check was cashed some creditors of the husband attached his property. The wife gave him the check, told him to pay oif the attachment, and for them to assign the attachment to her. Thereafter, other creditors of the husband claimed this property and in doing so presented the proposition (1) that the check became his property because she had turned it over to him and (2) that, the money having become his, he in effect paid off the mortgage himself and the property belonged to him. The court brushed both contentions aside with the statement:
* * * They proceed upon the theory that money of the wife which passes into hands of the husband, even as her agent, become ipso facto the property of the husband, without regard to justice or the intentions of the parties. The doctrine that a husband may be the agent of his wife is too familiar to need the citation of authorities; and the law does not compel a husband to deprive the wife of her own money, if it comes to his hands as her agent, nor does such possession of her property by him change its ownership.
To like effect is Springfield Inst. for Savings v. Copeland, 160 Mass. 380; 35 N.E. 1132. In that case tbe first suit was to require tbe John Hancock National Bank to turn oyer to tbe wife’s estate tbe money in that bank which the husband had deposited in his name alone and subject only to his signature. The court found that the money was derived from the proceeds of the wife’s separate property. The court pointed to old cases where it might be inferred under certain circumstances that a wife had made a gift of money, but pointed out that this was only a rebuttable inference, to be determined by the evidence in a particular case. The court said:
* * * We think, however, that the most reasonable inference from the facts found or agreed in the cases at bar is that the wife intended neither to give nor to lend to her husband the money which he deposited in his own name in the John Hancock National Bank, but that she permitted it to be deposited in this manner for convenience, until it should be invested, with the intention that it might be used either for her own benefit or. that of her husband. It is evident that the whole of the balance of $748.94, standing to the credit of Mr. Goodenough on the books of the John Hancock National Bank, together with what has heretofore been expended for the use of Mrs. Good- *58 enough, including the deposits in the savings banks, will not make up the amount of her money which is shown to have been deposited in that bank; and that, so far as appears, all the money which remains in that bank is her money, unless she has effectually given it to him. * * *
We are of opinion that the transfer made by each petitioner to the other constituted a bona fide sale of stock at the then market price.
In her return Mrs.. Dennett claimed the deduction of a loss of $50,024 on the sale of 2,000 shares of stock of General Capital Corporation. For this stock she received $100,000. The cost of the stock to her was $150,000. It is claimed that a stamp transfer tax of $24 was paid. But whether this payment, if made, was made by the husband or the wife does not appear. For lack of proof upon this point the loss is a legal deduction from gross income in the amount of only $50,000. Similarly, Dennett contends that he sustained a loss of $46,040 upon the sale of 1,000 shares of the stock to his wife in 1930. The cash book introduced in evidence does not show the payment of a stamp transfer tax. Accordingly, the apparent loss may not be increased to the extent of the $40 claimed to have been paid as such tax.
The respondent contends that if the petitioner is entitled to deduct any loss in respect of the sale to his wife he is entitled to deduct only six tenths of the claimed loss, on the ground that within 30 days from the date of the sale he acquired 400 shares of stock at $29 per share and that under section 118 of the Revenue Act of 1928 he is not entitled to deduct any loss in respect of the sale of 400 of the 1,000 shares. Dennett contends that he was a dealer in securities within the meaning of the section, and that section 118 has no application to him. The evidence does not show, however, that Dennett was anything more than an investor in securites. The contention of the respondent upon this point is sustained. Cf. Donander Co., 29 B.T.A. 312.
Mrs. Dennett further contends that she is entitled to deduct from her gross income a loss of $10,000 upon the bonds of the Detroit Railway & Harbor Terminal Co. At the time she made out her return for 1930 she was not aware that she had sustained this loss. The bonds were sold at auction in 1931, at a time when they were entirely worthless, at a price of $10, from which she received proceeds of $4. The fact that she succeeded in selling bonds that were entirely worthless in 1931 at an amount to return her $4 does not, we think, bar her from the deduction of the loss in 1930. The evidence proves the utter worthlessness of the bonds in 1930. The contention of Mrs. Dennett upon this point is sustained.
Reviewed by the Board.

Judgment will be entered wnder Bule SO.

SteRNhagen, Seawell, and Adams dissent.