# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1872, AT SALEM.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT,          } Justices.
Hon. SETH AMES,

## Commonwealth vs. Inhabitants of Gloucester.

By a statute, county commissioners were authorized to lay out a highway across a cove, "the same being navigable water," in a town, in case they thought the public good required it; and by a later statute, to take effect when accepted by the town, the town was empowered, in making the highway authorized by the former statute, to construct sluice-ways through it, provided that such sluice-ways did "not obstruct said highway, as laid out by the county commissioners." More than thirty years afterwards the town was indicted for building, across the cove, being navigable to and from the sea, at a point where a highway struck the cove, a dam or dike, and continuing the same to the obstruction of navigation. *Held*, on demurrer, that it did not appear as matter of law, from the statutes and indictment (1) that the county commissioners ever laid out a highway under the former statute; or (2) that if they did, they ever authorized the entire interruption of navigation; or (3) that the town ever availed itself of the second statute; or (4) that the dam or dike complained of was the same as the highway authorized by the statutes; or (5) that the highway, as authorized by the statutes, would have been an entire interruption of navigation.

Upon overruling a demurrer to an indictment for a misdemeanor, the Superior Court may order judgment for the Commonwealth, although the defendant has excepted to the overruling of the demurrer.

INDICTMENT, in the Superior Court, alleging that a certain cove, bay and arm of the sea, known as Goose Cove, in Gloucester, is and from the time whereof the memory of man runneth not to the contrary has been navigable to and from the open sea, and the tides have ebbed and flowed therein ; that the inhabitants of Gloucester in their corporate capacity on January 1, 1867, and on divers other days and times since, " with force and arms at Gloucester afore· said, unlawfully, wilfully and injuriously did erect and place and set up in, upon and across said Goose Cove and over the navigable waters aforesaid, at a part of said cove where a certain highway, leading from Riverdale, so called, in said Gloucester, to Bay View, so called, in said Gloucester, strikes said cove, a certain dam and dike, being a structure composed of stones and wood and earth, and extending across said cove, and of great length, to wit, the length of thirty rods, and of great height, to wit, the height of twenty feet," and continued and maintained the same, by means whereof the navigation and free passage of and in and over the cove, to and from the open sea, was greatly obstructed and confined.

The defendants demurred generally, but *Putnam*, J., overruled the demurrer. The defendants excepted to this ruling. The Commonwealth then moved for judgment, which was ordered, and the defendants alleged exceptions.

*B. F. Butler*, (*B. H. Smith* with him,) for the defendants. The St. of 1830, *c.* 79, entitled " An Act to authorize the laying out of a highway over Goose Cove in the town of Gloucester," enacts " that the county commissioners for the county of Essex be, and hereby are authorized and empowered to lay out a public highway across Goose Cove, in the town of Gloucester, the same being navigable water, in case said commissioners shall, after a full hearing, be of the opinion that the public good requires it." And the St. of 1831, *c.* 59, entitled " An Act in addition to ' An Act to authorize the laying out of a highway over Goose Cove in the town of Gloucester,' " enacts " that the town of Gloucester, in making the highway authorized by the act to which this is in addition, be and hereby is empowered to construct convenient and suitable sluice· ways or watercourses through said highway, and build flood-gates

suitable for admitting and stopping the tide waters, for the purpose of creating mill-privileges; and said town is further empowered to lease or dispose of the water-privilege so created, or erect mills thereon, and use or lease the mills erected; provided, however, that such watercourses or erections do not obstruct said highway, as laid out by the county commissioners," and " that this act shall take effect when the said town of Gloucester, at a legal meeting called for that purpose, shall accept the same."

These two acts are special public statutes concerning the public navigable waters of the Commonwealth, and are to be judicially taken notice of; and by the act of 1831 the court learns that a public highway has been laid out, as authorized by the former act. *Coolidge* v. *Williams*, 4 Mass. 140. *Commonwealth* v. *Springfield*, 7 Mass. 9. *Commonwealth* v. *Breed*, 4 Pick. 460. *Commonwealth* v. *Charlestown*, 1 Pick. 180. *Charlestown* v. *County Commissioners*, 3 Met. 202. *Commonwealth* v. *Taunton*, 7 Allen, 309. This laying out is entirely incompatible with the further navigability of the waters of Goose Cove above the highway or dam, so that, as shown by the public statutes of the Commonwealth, Goose Cove ceased to be navigable water in the sense and manner declared on in the indictment. The indictment therefore fails in the allegation that in 1867 Goose Cove, for passing and repassing into it from the sea, was navigable. *Commonwealth* v. *Lowell & Nashua Railroad Co.* 2 Gray, 54. *Commonwealth* v. *Proprietors of New Bedford Bridge*, Ib. 339. *Commonwealth* v. *Vermont & Massachusetts Railroad Co.* 4 Gray, 22. *Commonwealth* v. *Taunton*, 7 Allen, 309.

The indictment alleges that the defendants have constructed such dam or dike, crossing at the site where the highway strikes Goose Cove, completely across the cove, stopping up the navigation. It thus describes and gives the court to be informed that the town have constructed just such a dam, the top of which is authorized for a highway, as they were authorized to do by the statute; and although the statute is made to take effect upon being accepted at a legal meeting of the inhabitants of the town of Gloucester, the court will presume from the length of time

which has elapsed that it was so accepted. *Commonwealth* **v.** *Belding,* 13 Met. 10. *Stedman* v. *Southbridge,* 17 Pick. 162. *Cambridge* v. *Lexington,* Ib. 222. *Riddle* v. *Proprietors of Locks & Canals,* 7 Mass. 169, 185.

If it be said that the indictment proceeds for a different dam or dike than the highway, the answer is that, the town being authorized to make one dam or dike, and the indictment charging them with having made but one dam or dike across Goose Cove for the purpose of stopping the tide-waters, the authorization of the legislature covers all that is charged in the indictment.

The indictment, if any wrong has been done by the acts complained of, should have been against the county, for the highway was laid out by the county commissioners; and when a highway is once laid out the town is bound to construct and maintain it. Gen. Sts. *c.* 43, §§ 49, 50. *Riddle* v. *Proprietors of Locks & Canals,* 7 Mass. 169, 187.

Judgment should not have been ordered upon the overruling of the demurrer; proceedings should have been stayed until the decision of this court upon the exceptions was had. Gen. Sts. *c.* 114, § 10, *c.* 115, § 9, *c.* 129, § 64. Sts. 1864, *c.* 250, § 5; 1866, *c.* 228. *Commonwealth* v. *McGovern,* 10 Allen, 193.

*C. R. Train,* Attorney General, *& R. H. Dana, Jr.,* for the Commonwealth. The Sts. of 1830, *c.* 79, and 1831, *c.* 59, are special and private acts and should have been pleaded. The St. of 1830, *c.* 79, does not establish a highway, or require the county commissioners to lay it out. The court cannot judicially know that they ever laid out any highway, or if they did, what kind of highway it was, or what provisions were made for navigation. The phrase in the St. of 1831, *c.* 59, " as laid out by the county commissioners," was not a legislative declaration that the highway had been already laid out. The court cannot judicially know that the town of Gloucester ever accepted this statute. If the highway as authorized was laid out and constructed, it does not appear that it obstructed navigation. The system of sluice-ways would not preclude navigation. But there is nothing to connect the alleged nuisance with the highway authorized, or any thing to indicate that the dam or dike is a highway, or that any highway crosses the cove at all.

If a demurrer to an indictment for a misdemeanor is overruled, final judgment may be rendered thereon; it does not appear that the defendants asked leave to withdraw their demurrer, and if they did, it was discretionary with the Superior Court whether to grant the leave or not. *Evans* v. *Commonwealth*, 3 Met. 453. *Commonwealth* v. *McGovern*, 10 Allen, 193. *Regina* v. *Faderman*, 4 Cox C. C. 359. *Regina* v. *Hendy*, Ib. 243. *State* v. *Dresser*, 54 Maine, 570. *Regina* v. *Duffy*, 1 Lead. Crim. Cas. (2d ed.) 276, 284–288.

WELLS, J. Assuming, for the purposes of this case, that the Sts. of 1830, *c.* 79, and 1831, *c.* 59, are so far public acts that they need not be set out by plea, yet we are of opinion that the demurrer presents no question of law which can defeat the indictment.

1. It does not appear that the county commissioners ever laid out a highway, in pursuance of the authority given them by the first of those acts. The second act does not, in terms, recite such location as a fact accomplished; neither is it to be so taken, as a legal inference, from the language of the proviso that the erections " do not obstruct said highway as laid out." The participle is in a past tense from its relation to the verb which precedes, and which, though present in form, is manifestly intended to bear a future significance. If the second statute were incorporated with the first, the language would be entirely appropriate to the apparent purpose of the legislature, and give rise to no ambiguity. It is equally adapted to that purpose, whether the location had then been made or not.

2. If a highway was laid out under the first act, it does not appear that the county commissioners authorized the entire interruption of all navigable use of the water; nor that the construction of such a highway would necessarily cut off such use entirely.

3. It does not appear that the town ever accepted or availed itself of the second act; either by vote or by actual construction of such works as are therein authorized.

There being no fact in the case showing the existence of a highway across the cove, with dam, dike, causeway and flood-gates or sluice-ways, corresponding to the authority thus given by the two

acts, there is nothing to which the presumption can attach, that the proper forms of proceeding, necessary therefor, were adopted. *Non constat*, that any proceedings were had, or any highway or dike constructed until that complained of as built in 1867. The indictment, indeed, describes a highway as striking the cove at that part where the dam and dike complained of are built; but that does not identify either the highway or the dam, as structures authorized by the statutes in question.

4. But further, we do not see how the identity of the dam and dike complained of, with the structures authorized by the statutes relied on, can be made out otherwise than by proofs as a question of fact. A highway "across Goose Cove," even if made solid, would not necessarily exclude the whole from navigable use; and a dam or dike which obstructed navigation in the remainder, would be indictable.

5. If " convenient and suitable sluice-ways or watercourses through said highway " and " flood-gates suitable for admitting and stopping the tide-waters, for the purpose of creating mill privileges," would not, as is contended on the part of the Commonwealth, cause an entire interruption of all navigable use, then the construction of a dam and dike not required for the purposes indicated, and not authorized under the statutes relied on, would be a nuisance, for which this indictment would lie. *Commonwealth* v. *Nashua & Lowell Railroad Co.* 2 Gray, 54. *Commonwealth* v. *Proprietors of New Bedford Bridge*, Ib. 339. *Commonwealth* v. *Vermont & Massachusetts Railroad Co.* 4 Gray, 22.

That judgment of guilty may be rendered by the court, upon demurrer overruled, is fully settled. See authorities cited for the Commonwealth; also Gen. Sts. *c.* 158, § 5.

It is contended, however, that the court could not proceed to such judgment after exceptions were taken to the order overruling the demurrer.

There is some degree of ambiguity in the phraseology of the statutes in this regard. The term " judgment " is sometimes applied to the final determination of the issues in the case, or to the final ascertainment of the guilt of the accused, at *nisi prius*. It is also used in a larger sense, involving the order for execution or sentence.

It is used in the former sense in the Gen. Sts. *c.* 115, § 7, allowing exceptions to a "judgment of the court in matters of law." This court has always interpreted § 9, of the same chapter, as providing that the trial shall proceed to such a judgment at *nisi prius*, notwithstanding the allowance of exceptions to previous interlocutory opinions, rulings and directions, before the questions of law thus raised can be heard *in banc;* and the further provision that " no judgment shall be entered unless the exceptions are adjudged immaterial," &c., as referring to a judgment of the latter character, and such as is provided for in § 10. The exceptions, when allowed and filed, merely put upon record the questions of law thus raised. They do not remove the case. Until there is judgment upon the issues of fact, it is not apparent that the party has been prejudiced by the adverse ruling. Accordingly it is held that the whole record below must be complete before an excepting party can be heard by this court *in banc.* This was the settled rule of practice before the St. of 1859, *c.* 196. *Commonwealth* v. *Salem,* 11 Gray, 52. *Commonwealth* v. *Paulus,* Ib. 305. *Bursley* v. *Barnstable,* 14 Gray, 106. *Stetson* v. *Exchange Bank,* 7 Gray, 425. We do not think that any change in this particular was made by that statute, or by the Gen. Sts. *c.* 115, §§ 7–12. In both, the same provisions are made applicable alike to civil and to criminal cases. And in civil cases the rule of practice, above stated, has been frequently and uniformly maintained. *Case* v. *Ladd,* 2 Allen, 130. *Bennett* v. *Clemence,* 3 Allen, 431. *Webber* v. *Davis,* 5 Allen, 393. *Marshall* v. *Merritt,* 13 Allen, 274. Most of these cases, it is true, arose under the Gen. Sts. *c.* 129, § 64. That statute, however, does not provide the mode in which such questions shall be carried up. The demurrer is to be " further heard upon appeal or otherwise, as is provided in respect to such questions of law." If by exceptions, then the mode is governed by *c.* 115, §§ 7 *et seq.* The reasons for the rule, as explained in *Bennett* v. *Clemence,* are applicable equally to civil and to criminal cases ; and to exceptions as well as to cases of appeal. Those reasons are satisfactory to our minds, and lead to a consistent and uniform rule, which is salutary in its practical operation.

The judgment of guilty was properly entered in the court be-low. Without it the defendants could not have brought to this court the exceptions to the overruling of the demurrer. Doubt-less the Superior Court might have permitted the defendant to plead over, and have a trial of questions of fact. But if such pro-ceedings were to be had, the defendant was not entitled to have them delayed until the demurrer could be argued and decided in the court above. The exceptions filed and allowed did not super-sede nor suspend further proceedings in that court, except as to a final judgment awarding sentence.

Upon both points, therefore, the defendant fails to sustain the exceptions, and they must be                          *Overruled.*