NATIONAL GRANITE BANK *vs.* ISABELLA S. WHICHER.

Norfolk. November 16, 1898. — June 7, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Promissory Note made by Wife to Order of Husband — Action.*

A promissory note, signed by a married woman, payable to the order of her husband, and by him together with other persons indorsed, is void at common law; and the law has not been changed in this respect by our statutes relating to married women.

CONTRACT, upon three promissory notes, made by the defendant, payable to the order of her husband, T. A. Whicher, indorsed by him and others, and delivered to the plaintiff. The indorsements on all the notes, omitting the indorsements of interest, were as follows : " Waiving demand and notice. T. A. Whicher. Edward Whicher. Waiving demand and notice. L. E. Whicher."

At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, in substance as follows.

It appeared in evidence, among other things, that the plaintiff was located at Quincy, Mass.; that in December, 1891, among others, Rupert F. Claflin, Theophilus King, T. A. Whicher, and L. E. Whicher were its directors; that King was its president and Claflin its cashier; that in December, 1891, the firm of T. A. Whicher and Company, consisting of T. A. Whicher and L. E. Whicher, with its office at 15 High Street, Boston, was indebted to the plaintiff on demand notes aggregating $15,000; that the firm had arranged to change the partnership to a limited partnership; that the special partner was to contribute $150,000 additional capital; that T. A. Whicher and Company had arranged with the special partner that their contribution to the assets of the new firm should be between $125,000 and $150,000, and that in order to reach that result it was found necessary to have the liability which the bank then held against the firm cancelled, so that T. A. Whicher and Company could show $120,000 in assets above all liabilities; and that L. E. Whicher first proposed that he would give his personal notes indorsed by T. A. Whicher, also by E. Whicher, and thus cancel the loan to the old firm of T. A. Whicher and Company, and nothing was said at the time about the defendant having any connection with that transaction; but this was obviously objectionable, and was therefore declined.

King testified that L. E. Whicher then "wished to know if we would make a loan to Mrs. Whicher. I said that we would loan the money, I thought, to Mrs. Whicher, and then if she wished to loan it to the firm that would be all right, he could retire the notes"; that he was acquainted with Mrs. Whicher and knew about her financial situation and of the property standing in her name; that witness then spoke to some of the other directors, and then said to Claflin that "we would make the loan of $15,000 to Mrs. Whicher," and directed him to make payment to her of that amount on receiving the notes, — "her notes with the indorsements thereon"; and that he had no doubt he gave Claflin instructions in regard to making the check to the defendant.

Claflin testified that the money was paid to Mrs. Isabella S. Whicher by a check for $15,000, dated December 29, 1891, payable to her order, drawn by the witness, and signed "R. F. Claf-

lin, Cashier." The plaintiff introduced this check in evidence, and it was admitted that it had been indorsed in blank by the defendant. L. E. Whicher testified that King said that "if I would add Mrs. Isabella Whicher's name he would accommodate me"; that in consequence of that conversation the witness went to the defendant, and, in pursuance of an interview with her, she went to the office of T. A. Whicher and Company, at 15 High Street, Boston, in the forenoon of December 29, 1891, and that he had the three notes written according to his instructions; that "Mrs. Whicher (the defendant) signed them, my impression is that they were all indorsed at that particular time"; that Claflin evidently gave the witness a check for $15,000; that the witness handed it to the defendant and saw the defendant sign on the back of that check; that, after she signed, the check "was indorsed by me, and was given to my bookkeeper, who made out a deposit slip"; that the witness handed the check to Claflin, and Claflin made the entry of $15,000 on T. A. Whicher and Company's book, and passed the book back; that the witness then drew a check of $15,060.42 and gave it to Claflin, and received from him in return the old notes "for which that check was drawn to pay"; that the notes were brought to 15 High Street by Claflin; and that the defendant was in his private office when she signed those papers, and that Claflin was in the store on the same floor. The defendant identified her signature to the notes, and further testified that at the time she signed these notes she was not indebted to her husband, and did not understand that by signing them she became indebted to him for $15,000, or that she put herself under obligation to pay him $15,000 or to pay Edward or Louis E. Whicher $15,000, and that she had never said, as contended by the plaintiff, that she had borrowed $15,000 from the plaintiff and lent it to her husband's firm.

At the close of the evidence, the defendant asked the judge to rule, among other things, that there was no evidence which would warrant a verdict against the defendant; and also that, the notes in suit having been made by a wife payable to the order of her husband, no action could be maintained against her upon them.

The judge refused so to rule, and instructed the jury, among other things, as follows:

"If you find that the notes were made payable to the order of T. A. Whicher, the defendant's husband, not for the purpose of giving the husband an interest or title to the notes, but for the purpose of adding the husband's liability as an indorser to the notes and to enable the title to the notes to be passed to the bank for the purpose of procuring a loan by the defendant from the bank, and the notes were signed by the defendant for such purpose, and the loan was made by the plaintiff to the defendant, then the defendant is liable to the plaintiff for the face of the notes and the interest. . . . But if you say that was not the arrangement that was made, you will return a verdict for the defendant."

*S. H. Tyng*, (*J. P. Prince* with him,) for the defendant.

*C. H. Hanson*, for the plaintiff.

LATHROP, J. This is an action on three promissory notes, signed by the defendant, payable to the order of her husband, and by him together with other persons indorsed. That such a note is void by common law, which law has not been changed by our statutes relating to married women, is too plain for argument. *Gay* v. *Kingsley*, 11 Allen, 345. Nor does it make any difference that the note, after being indorsed by the husband, is given to a person in payment of a debt of hers to him. *Roby* v. *Phelon*, 118 Mass. 541.

In *Slawson* v. *Loring*, 5 Allen, 340, on which the plaintiff chiefly relies, it was held that an indorsement of a draft by a husband to his wife, and her subsequent indorsement of it with his assent to a third person, were sufficient to vest in the latter a valid title. This case, as an authority, has been limited to its particular facts. Speaking of it in *Roby* v. *Phelon*, it was said by Chief Justice Gray: "Unless the decision can be supported upon the ground that the wife acted only as the husband's agent and as a mere conduit for passing the title to the indorsee, (as suggested in *Gay* v. *Kingsley*, cited above,) and thus stand as if the name of the wife as indorsee and indorser had been stricken out by the husband before he delivered the bill, leaving it indorsed by him to the subsequent indorsee, it is inconsistent with the earlier and later decisions of this court." See *Foster* v. *Leach*, 160 Mass. 418.

We are of opinion, therefore, that the instruction requested —

namely, that the notes in suit having been made by a wife payable to the order of her husband, no action could be maintained against her upon them — should have been given, and that the instructions given were wrong.

*Exceptions sustained.*