THEODORE H. TYNDALE, administrator, *vs.* EBEN C. STANWOOD.

Norfolk.    March 7, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Real Action.    Executor.    Practice, Civil.*

Under R. L. c. 146, § 17, an administrator cannot maintain a writ of entry to recover land fraudulently conveyed by his intestate which he alleges that he is licensed to sell as administrator, when an appeal has been taken from the decree of the Probate Court granting him the license to sell the land, and exceptions to the order of a single justice of this court confirming the decree of the Probate Court and to rulings of the single justice have not been passed upon by the full court, and, even if the order of the single justice is affirmed by the full court while the writ of entry is pending, the demandant cannot recover in his action thus prematurely brought.

Discussion by HAMMOND, J. of the history and effect of exceptions in this Commonwealth.

WRIT OF ENTRY, dated October 15, 1902, under R. L. c. 146, § 17, for a certain parcel of land in Quincy with the buildings thereon, which the plaintiff alleged that he was licensed to sell as administrator of the estate of Isabella S. Whicher, and which he alleged had been fraudulently conveyed by his intestate to the tenant.

At the trial in the Superior Court before *Harris,* J., the demandant, among other requests, asked the judge to rule as follows: " An appeal having been taken from the decree of the Probate Court, licensing the sale of the property in question, ' all proceedings in pursuance of the act appealed from ' were

'stayed until the determination thereof by the Supreme Court of Probate.' As such determination was not made until after the commencement of this action, the same was prematurely brought."

The judge refused to rule as requested and submitted the case to the jury on the issue whether the conveyance by the intestate was fraudulent. The jury found for the demandant; and the tenant alleged exceptions.

R. L. c. 146, § 17, is as follows: " Section 17. If an executor or administrator is licensed to sell land which has been fraudulently conveyed by the deceased or is fraudulently held by another person for him, or land to which the deceased had a right of entry or of action or of which he had a right to a conveyance, he may, within one year after such license, sell the land without first obtaining possession thereof by entry or action, or he may without a formal entry bring an action to obtain possession by virtue of such license, demanding the land as executor or administrator, and may sell the same within one year after possession is obtained."

In *Tyndale* v. *Stanwood*, 182 Mass. 534, is reported the decision of this court, made on January 26, 1903, ordering that the decree of a single justice be affirmed, affirming the decree of the Probate Court granting leave to the demandant to sell the real· estate in question.

*S. H. Tyng & J. P. Prince*, for the tenant.

*R. M. Morse*, ( *C. H. Hanson* with him,) for the demandant.

HAMMOND, J. This is a writ of entry brought under R. L. c. 146, § 17, by the administrator of the estate of Isabella S. Whicher, lately deceased, to obtain possession of certain land which is alleged to have been fraudulently conveyed to the tenant, and which the demandant declares he has been licensed to sell. The chief question is whether at the time the action was brought there was any operative license to sell.

The facts material to this question may be briefly stated. After prolonged litigation, (see 173 Mass. 517, 176 Mass. 547, 179 Mass. 390,) a claim in favor of a national bank was finally established against the estate. Whereupon the administrator represented that the estate was insolvent, commissioners were appointed before whom this claim was proved, the administrator

filed in the Probate Court a petition for leave to sell the land in question to pay debts and charges of administration, and on April 16, 1902, the court entered a decree granting the license. From this decree an appeal was taken and entered in this court as the Supreme Court of Probate, and a hearing was had before a single justice, who ordered a decree affirming the decree of the Probate Court, which decree thus ordered was transmitted to and filed in the Probate Court on the same day in which, though before, the present action was brought. Exceptions were taken by the appellants, one of whom was this tenant, to various rulings made at the hearing before the single justice, and also to the order affirming the decree of the Probate Court. The record before us states that these exceptions were all overruled by the full court by its rescript dated and filed January 26, 1903. An examination of the papers in that case, including the written opinion of the full court, however, shows that while the exceptions were considered and found unsound, the language of the rescript was simply "Decree affirmed."

It therefore appears that, at the time this present writ issued, exceptions taken at the hearing before the single justice and also to his order affirming the decree of the Probate Court, although not yet formally allowed, were still pending; and the question is whether under this state of things there was any operative license at the time the writ issued.

While the appeal from the Probate Court did not bring to this court the whole case, and did not invalidate anything there done under the decree prior to the appeal if the decree was finally affirmed by this court, yet it brought here the whole question, including both law and fact, whether the decree was wrong for any of the reasons assigned by the appellants, and suspended its operation until the determination of the appeal by this court. *Gale* v. *Nickerson*, 144 Mass. 415. R. L. c. 162, § 16. It therefore becomes necessary to consider the effect of the proceedings in this court at the stage in which they were at the time this writ issued.

At common law a writ of error, so far as based upon an error at law, lay only when the error was apparent on the record. Inasmuch as rulings made during the trial did not so appear, St. 13 Edw. I. c. 31, was passed, which allowed a party to state

in writing his exception to any rulings, including those not otherwise theretofore made matter of record, which, when signed and sealed, became a part of the record; and the ruling thus excepted to could then be revised on writ of error. See *Cogswell* v. *Dolliver*, 2 Mass. 217, for an instance of this. It is obvious that under this practice the case went to judgment notwithstanding the exceptions, and the proceedings, if stayed at all, were not stayed by the bill of exceptions but by the writ of error. But to avoid the inconvenience of this practice, a more summary method of raising questions of law was early adopted in this State, upon which our present practice is based. Authority for this summary method of raising and disposing of questions of law is first found in the statute which authorized terms of this court to be held by a single justice. It provided that whenever the court should be held " by any two or one of the justices thereof, it shall be lawful for any party, thinking himself aggrieved by any opinion, direction or judgment of the said justices or either of them, in any action or process of a civil nature, to allege exceptions to the same . . .; and such exceptions being reduced to writing, in a summary mode, and presented to the court before the adjournment . . . without day, and found conformable to the truth . . . shall be allowed and signed by the presiding justice . . ., and thereupon all such actions or process, in or upon which judgment shall not have been rendered at the time of allowing such exceptions, shall be continued to " the term held by the full court, and also " such actions or process wherein exceptions shall be alleged to the final judgment of court thereon, shall likewise be continued in the same manner, and execution thereon shall be stayed, but without prejudice to any attachment, made on the original writ . . . provided, however, that no trial by jury shall be delayed or prevented, by the making or filing of exceptions to the opinion or judgment of the court, upon any dilatory plea, or upon any question of law arising during the trial." Then follows a provision for the entry of judgment and award of execution in cases where the exceptions appear to be frivolous, immaterial, or intended for delay. St. 1803, c. 94, § 5. The next year this statute was repealed, and for it was substituted St. 1804, c. 105, which contained substantially the same provision. This method of carry-

ing questions of law to this court was afterwards extended so as to apply to proceedings in the various courts of common pleas, (St. 1813, c. 173, § 2, St. 1817, c. 185, § 5, St. 1820, c. 79, § 5,) and in the Superior Court.

From time to time changes have been made in the details of this system, but in substance and effect it remains as outlined in the statute where it first appears. The plain purpose of this method was to have questions of law settled before final judgment, or, where the exception was to the judgment, before issue of the execution ; and that radical feature has been constantly maintained except where the exceptions are frivolous, immaterial, or intended for delay. This feature appears in R. L. c. 173, § 79, in this form : " The trial of questions of fact shall proceed although exceptions have been filed and allowed therein, and such further proceedings shall be had as the court orders ; but judgment shall not be entered unless the exceptions are adjudged immaterial, frivolous or intended for delay."

Under this system, exceptions may be allowed and entertained to decisions of justices of this court sitting in equity or for the hearing of appeals from the Probate Court. *Dorr* v. *Tremont National Bank*, 128 Mass. 349, and cases cited. In such cases the general radical feature of the system remains, and, where the exceptions are taken to the rulings made at the hearing, no final order or decree should be passed before the expiration of the time for filing the exceptions or until the determination of the questions of law thereby raised. *Prescott* v. *Prescott*, 175 Mass. 64. *Green* v. *Crapo*, 181 Mass. 55. *Goff* v. *Britton*, 182 Mass. 293. In the case before us no final decree affirming the decree of the Probate Court could properly have been made until after the expiration of the time for filing a bill of exceptions, or (if filed) until the determination of the questions of law therein raised. In legal effect the decree made by the single justice can be regarded only as an order for a final decree of affirmation of the decree of the Probate Court. But even if it were otherwise and the order would be construed as a final decree, still the exception taken to the decree would stay its operation until the exception taken to it was disposed of. Such a view is in accordance with one of the leading features of this system of raising questions of law, as established by the statute

in which it was first authorized, and ever since continued. In either event, therefore, there does not appear to have been in force at the time this writ was sued out, any license authorizing the demandant as administrator to sell this estate. The demandant has called our attention to *Commonwealth* v. *Gloucester*, 110 Mass. 491, where it was adjudged in a criminal case that judgment of guilty could be rendered by the court after exceptions to an order overruling a demurrer to the indictment had been taken and remain undisposed of, but a reading of that case shows that the decision is in no respect inconsistent with the views above expressed.

It is urged, however, by the demandant, that even if the license was not operative at the time the writ issued, inasmuch as the exceptions were held unsound and the decree granting a license was finally affirmed by the full court, the affirmation relates back to the time of the appeal, and validates intervening action. While it is true that an order or decree of the Probate Court is not vacated by an appeal but is simply suspended, and upon being affirmed by the Supreme Court takes effect and operates as a decree of the Probate Court and any intermediate action which has been had under the decree is valid, (*Gale* v. *Nickerson, ubi supra,*) still it is obvious that such intermediate action must be such as, at the time it is taken, is permitted by law, as action taken prior to the appeal. Where the statute declares a decree suspended, there can be no legal action under it. *Arnold* v. *Sabin*, 4 Cush. 46. The time of suspension must be a time of inaction, as well with reference to things not yet undertaken as those partially performed. No other interpretation would give due effect to the suspension or be consistent with the due and orderly administration of the law.

It follows that the demandant failed to show so far as material to this action the license necessary to its maintenance, and the tenant was entitled to the ruling that the action was prematurely brought.

*Exceptions sustained.*