## HAMILTON v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, First Circuit.
March 5, 1928.

No. 2192.

Internal revenue ⟨⇒7(3)⟩—Husband held not subject to income tax on entire profits of a business, 25 per cent. of which was owned and the profits received by his wife.

Where a wife owned a manufacturing business, including real estate, personal property, and good will, and orally agreed to sell 75 per cent. of it to her husband, which agreement was void and unenforceable under the law of Massachusetts (Gen. Laws Mass. c. 209, §§ 2, 3), but was being carried out by the parties, though without conveyance of any of the property, the wife receiving 25 per cent. of the profits of the business, the husband *held* not subject to income tax on the entire profits.

Appeal from the Board of Tax Appeals.

Petition by Ashton Hamilton against the Commissioner of Internal Revenue to review decision of the Board of Tax Appeals. Reversed and remanded.

Robert C. McKay, of Boston, Mass., for petitioner.

J. M. Leinenkugel, of Boston, Mass. (Mabel Walker Willebrandt, C. M. Charest, and L. W. Scott, all of Washington, D. C.), for respondent.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a petition for a review of a decision of the Board of Tax Appeals, holding the petitioner liable for $11,378.15 as a deficiency in his income tax for 1922.

The question is whether the petitioner is taxable for the entire income from the business then conducted by him, or whether one-fourth, or $20,703.66, is the income of his wife. The facts appear in the depositions of the petitioner and his wife; there was no other evidence.

In 1907, petitioner's wife (then Helen Wade) inherited from her father a shoe-trimming plant and business in Brockton, Mass., consisting of land, buildings, machinery, merchandise, and (presumably) cash and bills receivable. She married the petitioner, Ashton Hamilton, and carried on this business as sole proprietor under the name of Hamilton-Wade Company, until December 31, 1919. Her husband was her agent or manager; she was the bookkeeper; as she had been for her father since 1889. The profits were shared equally between the manager-husband and the owner wife.

At the end of 1919 a new arrangement or "agreement" was made between husband and wife, neither clearly defined in the minds of the parties, nor carried into legal results, even to the extent covered by their loose understanding. The general purpose was to make the husband manager the proprietor to the business world, he to pay his wife $100,000 in cash and securities, and $150,000 more from his share of the profits; his wife reserving 25 per cent., certainly of the profits from and after January 1, 1922, and probably 25 per cent. of the stock of the intended corporation.

The petitioner's evidence, somewhat abbreviated, is as follows:

"A. In 1920 I bought a 75 per cent. interest from Mrs. Hamilton, and have been conducting it since as the Hamilton-Wade Company.

"Q. 4. You state you bought out 75 per cent. of the business? A. Yes; 75 per cent. of the business.

"Q. 5. Did you intend to form a partnership with your wife at this time? A. That was our plan.

"Q. 6. When you bought this 75 per cent. interest in the business from your wife in 1920, did you make any agreement with your wife in regard to the conduct of the business? A. Yes. The agreement was that I was to receive 75 per cent. of the profits of the business and buy that for a stipulated sum—for $250,000—and pay a portion of that in cash [and] securities.

"Q. 7. When did you start conducting the business under this agreement? A. January 1, 1920.

"Q. 8. Was this agreement with your wife under which you conducted the business written or oral? A. Oral.

"Q. 9. What was the nature of the property of the Wade Manufacturing Company at the time you purchased this interest in the business? A. Land, buildings, machinery, stock, or merchandise.

"Q. 10. At the time you made this agreement with your wife, did she transfer this property and convey the land to you? A. She transferred the bank account to the Hamilton-Wade Company, but none of the other property.

"Q. 11. Has she since transferred this property to you, or to the Hamilton-Wade Company? A. No, sir; not as yet.

"Q. 12. What did your agreement provide as to the conveyance of the assets of the business? A. We intended to convey them to the Hamilton-Wade Company.

"Q. 13. Why were they never conveyed? A. Well, we delayed on that somewhat because we had been considering for some time past making a corporation of it."

Hamilton testified that for 1920, 1921, and 1922 he reported in his individual return to the collector of internal revenue the entire income of the Hamilton-Wade Company, stating, for 1922, one-fourth as paid to Mrs. Hamilton "as commissions," and explained:

"Q. 18. Why did you report this amount as a deduction on account of commissions paid in 1922, rather than a share of the profits? A. Well, there is really a little detail to that. We had always done it that way previous to my being proprietor of the business. Mrs. Hamilton and I had an agreement whereby I was to receive 50 per cent. of the profits for my services as manager of the business, and, she being proprietor of the business, she reported this 50 per cent. of the profits as commissions paid, and when the change was made I did likewise.

"Q. 19. When this 25 per cent. of the profits was credited to your wife on the books, did you understand it as a division of the profits, or a liquidation of part of your indebtedness to your wife? A. I understood it to be her share of the profits in accordance with our agreement."

Obviously, it is immaterial whether he called his wife's share "commissions" or anything else.

On cross-examination petitioner testified (rather inconsistently):

"X-Q. 17. To make the thing clear in my mind, do you claim that you own that business as an individual, or do you claim to run a partnership with your wife? A. As an individual.

"X-Q. 18. In your direct examination you stated you purchased a 75 per cent. interest? A. I purchased a 75 per cent. interest in the profit of the business.

"X-Q. 19. Can you buy three-quarters of a business, and own it entirely? A. Well, with strangers I presume it would conflict.

"X-Q. 20. In the arrangement with Mrs. Hamilton, was it understood that you should own the business? A. The certificate at city hall shows that I conduct it as proprietor.

"X-Q. 21. I am asking the question now if you own this business entirely? A. I bought three-quarter interest in the business.

"X-Q. 22. Do you wish to withdraw that you own the business? A. No.

"X-Q. 23. Did you file a certificate with the city clerk? A. Yes. It states, 'Ashton Hamilton, Proprietor.'"

Mrs. Hamilton's evidence is substantially the same, even to ambiguities and inconsistencies. She says her husband "bought a portion of it (the business)—75 per cent."

"Q. 6. Will you explain more definitely what you mean by buying 75 per cent. of the business? A. He agreed to buy the business for the sum of $250,000, for which he gave me securities for $100,000, and the balance was to be paid out of his 75 per cent. of the profits, and I was to retain 25 per cent. of the profits of the business."

"Q. 12. You have stated that you received 25 per cent. of the profits of the business in 1922; did you understand that payment to be a share of the profits or a liquidation of a part of your husband's indebtedness to you? A. I understood it to be a share of the profits in accordance with our agreement."

"X-Q. 3. In 1920 you made this agreement with him to sell 75 per cent. of the business? A. Yes.

"X-Q. 4. And did you own 25 per cent. of the business yourself? A. Twenty-five per cent. of the profits of the business.

"X-Q. 5. What became of the 25 per cent. of the business that you did not sell? A. I still receive the 25 per cent. of the profits of the business.

"X-Q. 6. Who is the owner of the 25 per cent. of the business that you did not sell to Mr. Hamilton? A. I suppose that would be mine.

"X-Q. 7. But you have allowed him to give the impression that he owned the entire

business? A. Yes; I did. We felt that it was to the advantage of the business for him to be proprietor of the business.

"X-Q. 8. At the same time you did not sell him 25 per cent. of the business; that still belongs to you? A. Well, I have not thought of it belonging to me, other than 25 per cent. of the profits."

"X-Q. 11. And have you not sold 75 per cent. to Mr. Hamilton? A. Yes.

"X-Q. 12. And who did you suppose the other 25 per cent. belonged to? A. I do not think I can answer that exactly. I always considered it his business and I retained 25 per cent. of the profits.

"X-Q. 13. Anything that belonged to you, and you did not sell, wouldn't you regard as your property? A. Naturally.

"X-Q. 14. With 25 per cent. belonging to you, Mr. Hamilton could not own the entire business? A. Well, naturally; but still I have always felt that he owned the business.

"X-Q. 15. What was the object in selling the business to your husband? A. We felt that it was to his advantage and to the advantage of the business for him to be proprietor in every way."

She says they talked with a lawyer, who gave her "an idea as to what I could do and what I could not do; I carried it out as I saw fit." This exonerates the lawyer from responsibility for the confusion. Even the amount paid is left uncertain. Both say that about $200,000 of the agreed price of $250,-000 has been paid; but Mrs. Hamilton also says her husband still "owes" her "about $19,000."

Turning now to the applicable provisions of the Massachusetts Statutes, Gen. Laws Mass. c. 209, §§ 2 and 3, read:

Section 2: "A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, except that she shall not be authorized hereby to make contracts with her husband."

Section 3: "Gifts of personal property, and conveyances of real estate other than mortgages, between husband and wife, shall be valid to the same extent as if they were sole, except that no such conveyance of real estate shall have any effect, either in passing title or otherwise, until the deed describing the property to be transferred is duly acknowledged and recorded in the registry of deeds for the district where the land lies."

In Gahm v. Gahm, 243 Mass. 374, 375, 137 N. E. 876, the Supreme Judicial Court, by Rugg, C. J., said:

"The common-law disabilities of married women as to the making of contracts have been removed by statute, so that they now can contract and sue and be sued in the same manner as if single, subject, however, to the limitation that contracts and suits between husband and wife are not permissible, but stand on the same footing as heretofore. G. L. c. 209, §§ 2, 4, 6. * * * A promissory note or other contract for the payment of money lent by the wife to the husband is absolutely void. It is a nullity. It cannot be enforced against the husband. National Bank of the Republic v. Delano, 185 Mass. 424 [70 N. E. 444]; National Granite Bank v. Whicher, 173 Mass. 517 [53 N. E. 1004, 73 Am. St. Rep. 317]; Atkins v. Atkins, 195 Mass. 124, and cases cited at page 128 [80 N. E. 806, 11 L. R. A. (N. S.) 273, 122 Am. St. Rep. 221]; Leavitt v. Wintman, 234 Mass. 248, 250 [125 N. E. 390]. It makes no difference in this particular whether recovery is sought of the spouse directly or of his estate. Kneil v. Egleston, 140 Mass. 202 [4 N. E. 573]; Clark v. Royal Arcanum, 176 Mass. 468 [57 N. E. 787]; Hayes v. Gill, 226 Mass. 388, 115 N. E. 492. It has been said repeatedly in effect that equity affords no relief in the enforcement of such contracts. A court of chancery cannot impart validity to that which the law declares void. Woodward v. Spurr, 141 Mass. 283 [6 N. E. 521]; Fowle v. Torrey, 135 Mass. 87; Clark v. Patterson, 158 Mass. 388 [33 N. E. 589, 35 Am. St. Rep. 498]; National Granite Bank v. Tyndale, 176 Mass. 547, 550 [57 N. E. 1022, 51 L. R. A. 447]; Caldwell v. Nash, 190 Mass. 507 [77 N. E. 515]. These principles are decisive against the petitioner.

"There is jurisdiction in equity over suits between husband and wife to secure her separate property, to prevent fraud, to relieve from coercion, to enforce trusts and establish other conflicting rights concerning property. Frankel v. Frankel, 173 Mass. 214 [53 N. E. 398, 73 Am. St. Rep. 266]; Woodard v. Woodard, 216 Mass. 1 [102 N. E. 921]; Fitcher v. Griffiths, 216 Mass. 174 [103 N. E. 471]; Carpenter v. Carpenter, 227 Mass. 288 [116 N. E. 494]; English v. English, 229 Mass. 11 [118 N. E. 178]; Daniels v. Daniels, 240 Mass. 380 [134 N. E. 235]. But none of these decisions affords ground for the contention that suit can be maintained between husband and wife on a simple contract between them for the payment of money without some circumstance raising equitable considerations."

The Board of Tax Appeals held petitioner taxable on the entire profits for 1922, as "gross income" under section 213 (a) of the

Revenue Act of 1921 (42 Stat. 227 [Comp. St. § 6336⅛ff]), which "includes gains, profits, and income derived from * * * businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * *" To reach this result the board undertook to find that, on this record, "title to all the personal property passed to the husband since he is in undisputed control thereof, with the knowledge and approval of the wife," and that he has "an equitable title" to the realty; so that "for the purpose of federal taxation" the husband should be considered the owner of all of the assets of the business. This was plainly wrong. The so-called agreement was a nullity. Apart from the statute of frauds, performance of it could not have been enforced even in equity. At most, if the husband had made full payment and the wife had then refused performance, he might perhaps, in equity, have recovered the purchase price. Atkins v. Atkins, 195 Mass. 124, 80 N. E. 806, 11 L. R. A. (N. S.) 273, 122 Am. St. Rep. 221. But even if Mr. and Mrs. Hamilton had done everything their arrangement contemplated, title to the entire profits of 1922 (the basis of this tax) would never have been in the petitioner. Prior to this arrangement, Mrs. Hamilton owned the entire business—realty, personalty, and good will. She could have transferred to her husband, by appropriate instruments, all or any part of this property, or in its profits as a going concern. She never agreed to transfer more than 75 per cent. of the profits of 1922 and subsequent years. There is not a scintilla of evidence that her husband ever obtained, or contemplated obtaining, the entire profits of 1922. It is immaterial whether he had good title to the res of the personalty; he certainly had no title, legal or equitable, to the res of the realty—an undisclosed portion of the subject-matter of the arrangement.

Such cases as English v. English, 229 Mass. 11, 118 N. E. 178, cited and relied upon by the government, are wide of the mark. Those cases merely hold that, after an absolute conveyance to the wife (or husband), there is, in the absence of evidence, no presumption of a trust in favor of the grantor.

Equally inapplicable is United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285, in which the Supreme Court held that, under the community property law of California, the wife had only an expectancy in the income of the ganancial partnership, so that the entire income might be taxed to the husband. Under Massachusetts law, husband and wife cannot be partners.

In the instant case, there was no conveyance at all of the realty—an essential part of the contemplated transaction, and without which it is at least doubtful whether title to any of the personalty passed; there was but partial payment of the proposed purchase price; the real plan contemplated a corporation, and the parties had not, on this record, thought their problem out beyond the price to be paid and a purpose that the wife should, after January 1, 1922, have indefinitely 25 per cent. of the profits. Probably when they came, under guidance of counsel, to incorporate, it would have been found that they really intended the wife to have 25 per cent. of the stock; i. e., a quarter interest in both res and profits. It is no part of the duty of this court to determine what legal rights, if any, Hamilton acquired in his wife's property and business from their invalid agreement and his partial payment. For present purposes it is enough to hold that the 25 per cent. of the 1922 profits, now taxed as the husband's, never passed, or was intended to pass, to the petitioner.

The order of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.