MARY E. CLARK *vs.* JOHN B. PATTERSON & others.
STEPHEN G. CONDIT *vs.* SAME.

Suffolk.     January 26, 27, 1893. — March 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Loan by Married Woman to Husband — Presumption — Insolvent Estates — Claim against Firm Assets — Note given to Wife by Husband's Firm — Dismissal of Bill in Equity.*

If a wife places in her husband's hands her separate property, the presumption, in the absence of evidence that he receives it in trust for her, or of fraud practised upon her, is that he can use it as his own.

If a married woman lends property to her husband and takes from him an obligation indorsed by his partner, the obligation is provable, if at all, only against the separate assets of the insolvent estates of the signers, and she has no claim against the assets of the firm.

A note given to a wife by a partnership of which her husband is a member is void as between the original parties, and equity cannot afford relief.

If the plaintiff in a second bill in equity does not seek relief, if the first bill is dismissed, then, on the first bill being dismissed, the second is rightly dismissed also.

LATHROP, J.     The first case is a bill in equity against John B. Patterson, Michael J. Sughrue, Stephen G. Condit, and the Broadway National Bank.     The case was heard on the merits in the Superior Court, and a decree was entered dismissing the bill. From this decree the plaintiff appealed; and the case comes before us on the pleadings and a report of the evidence taken in the court below.     Most of the facts of the case are not in dis-

pute, while as to others there is a controversy. We find them to be as follows.

In May, 1890, Linus E. Clark, the husband of the plaintiff, entered into partnership with the defendant Patterson. By the terms of the articles of copartnership, Clark agreed to contribute to the partnership the sum of one thousand dollars in cash. Clark had no money, but said to Patterson that he had a bond, on which he could realize the money. The bond in question was for the sum of one thousand dollars, and was issued by a water company, and was payable to bearer. It belonged to the plaintiff, and she lent this bond to her husband, and took from him an instrument in writing of the following tenor: "$1000. Boston, May 5, 1890. For value received, pay to the order of Mary E. Clark, one thousand dollars. Value received, and charge the same to account of Linus E. Clark. To Mary E. Clark." This instrument was indorsed in blank by the defendant Patterson, by writing his own name upon it. With this bond as collateral security, the defendant bank lent the firm of Patterson and Clark the sum of one thousand dollars, payable on demand, and took the firm note therefor.

On August 5, 1890, the plaintiff lent her husband a coupon bond of another water company, payable to bearer, for one thousand dollars. She received therefor from her husband the promissory note of the firm of Patterson and Clark, for the sum of one thousand dollars, payable to her order, on demand. With this bond as collateral security, the firm of Patterson and Clark borrowed of the defendant bank the sum of eight hundred dollars, and gave its promissory note therefor. The bank had no notice of the plaintiff's interest in either bond. Some time after the latter transaction with the bank, the firm of Patterson and Clark failed, and, on September 29, 1890, executed an instrument of assignment to the defendant Sughrue of all their assets, in trust for the creditors of the firm who should become parties thereto. This instrument authorized the assignee, among other things, "to sell and dispose of all the trust property as by him deemed wise, and to collect or sell choses in action, using a reasonable discretion as to the times and modes of selling and disposing thereof, for cash or on credit, at public or private sale."

When Patterson and Clark failed, the plaintiff made claim for the amount of the two instruments delivered to her by her hus-

band, and wished to assent to the instrument of assignment as a creditor, and did what she could to become a party thereto. She was told by the assignee that by the laws of this Commonwealth such a claim was not authorized, and was advised to employ counsel. She did employ counsel, who advised her that she had no claim on the assets of the firm. On October 10, 1890, with the advice and consent of her counsel, she signed the following paper : " It is agreed that the bonds held by the Broadway National Bank may be sold by said bank at private sale, and the proceeds, after payment of the bank's claim, may be held by the bank and paid to whomsoever is entitled thereto as soon as same may be determined or settled. This agreement is understood to be without prejudice to the rights or titles of either party."

The bank did not become a party to the assignment; and, on November 29, 1890, sold the bonds, under a power of sale contained in the notes, for about eighteen hundred dollars. It does not appear that there was any surplus after satisfying the claim of the bank.

On October 25, 1890, the defendant Condit, who was the largest creditor of the firm, bought of the assignee all the assets of the partnership, and agreed in writing " to compromise, assume, or pay all claims and demands against the partnership of Patterson and Clark." At the time he entered into this agreement, he was informed by the assignee that all the claims he had to settle were the claims against the firm for merchandise, and that he had nothing to do with the bonds held by the bank, or with the claims of the present plaintiff.

The bill in the second case is brought by Condit against Patterson, Sughrue, Clark and his wife, and the Broadway National Bank. It proceeds on the ground that, if the court shall hold that the plaintiff is bound to Mrs. Clark, by reason of the agreement entered into between the plaintiff and Sughrue, the agreement was entered into through a mistake of law and fact. The prayer of the bill is that, on his delivering up the assets received by him, the agreement may be cancelled. . This bill was dismissed by the Superior Court, on the ground that the plaintiff stood in no need of equitable relief, as the bill in the first case had been dismissed. From this decree the plaintiff appealed to this court, in order that the whole matter might be before the court.

We proceed to consider the claims made by the plaintiff in the first case. She contends that she never parted with her property in the bonds; that they were merely lent by her to her husband; and that a trust was imposed upon the bonds in her favor. It was held in *Jacobs* v. *Hesler*, 113 Mass. 157, that if a wife places in her husband's hands money that is her separate property, the presumption, in the absence of evidence that he receives it in trust for her, is that he can use it as his own. See also *Brown* v. *Wood*, 121 Mass. 137. We find nothing in the case at bar to warrant us in deciding that the bonds were received by the husband in trust for the plaintiff, or anything to rebut the presumption that he was at liberty to use the bonds as he pleased. Nor do we find any evidence of fraud practised upon her. See *Thacher* v. *Churchill*, 118 Mass. 108.

The next contention of the plaintiff is that, if she has no property in the bonds, she has a claim against the partnership on the two instruments given her at the times the bonds were handed over by her. The first instrument, whether it be styled a draft or a note, was not an undertaking by the firm. It was at most an undertaking by one member of the firm indorsed by the other; and, if provable at all, would be only against the separate assets of the signers. There were no separate assets in this case; and the plaintiff can have no claim against the firm assets on account of this instrument.

As to the second note, it was void as between the original parties, being given to a wife by a partnership of which her husband was a member. *Kenworthy* v. *Sawyer*, 125 Mass. 28, and cases cited. Nor does equity afford relief in such a case. *Fowle* v. *Torrey*, 135 Mass. 87. See also *Kneil* v. *Egleston*, 140 Mass. 202. It was, moreover, decided in *Woodward* v. *Spurr*, 141 Mass. 283, that a wife was not entitled to prove, against the estate of her husband in insolvency, a claim for money lent by her to him from her separate estate, and used by him in his business, and for which she held his promissory note, notwithstanding the St. of 1884, c. 293, providing for the proof of equitable liabilities against insolvent estates.

It follows from these cases that the plaintiff was not entitled to prove against the assets of the partnership, and that the decree below, dismissing the bill, was correct.

In the second case, as the plaintiff does not seek relief, if the bill in the first case is dismissed, the decree below is correct.

*Decrees affirmed.*

*L. M. Child*, for the plaintiff, Mary E. Clark.

*A. F. Means & J. Lowell*, for Patterson and Condit.

*G. L. Huntress*, for Sughrue.