HARRY J. JAQUITH, assignee, *vs.* MASSACHUSETTS BAPTIST CONVENTION & others.

Suffolk.    December 6, 1898. — January 7, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ..

*Husband and Wife — Conveyance — Presumption — Gift — Validity; as to Creditors.*

Where a husband conveys land to his wife, the presumption is that it is a gift to her, and, although the presumption may be rebutted by evidence, the facts that the transfer, which was without pecuniary consideration, was made for the purpose of having the property stand in the wife's name instead of the husband's, that after such conveyance the husband and wife joined twice in mortgaging the property to raise money for his business, that at all times the insurance on the house upon the premises was taken out in his name as owner, and was never assigned to her, and that all payments of interest on a prior mortgage were made by the husband's check, are not sufficient to overcome the presumption.

If, at the time when a husband conveys land to his wife without pecuniary consideration he owed business debts, but it does not appear that he was insolvent or in contemplation of insolvency, nor that there were any creditors then existing who had not since been paid whatever at that time was due them, nor that there was not left in his hands sufficient to pay his creditors as their claims matured, and it does appear that he actually did pay until more than a year afterwards, the conclusion that the conveyance was made for the purpose of delaying or defrauding creditors is not warranted, and the conveyance will not be held to be void as to them; and the facts that, after the conveyance, the husband and wife joined twice in mortgaging the property to raise money for his business, that at all times the insurance on the house upon the premises was taken out in his name as owner, and was never assigned to her, and that all payments of interest on a prior mortgage were made by the husband's check, do not show that the property ever thereafter passed to him.

BILL IN EQUITY, filed April 22, 1897, in the Superior Court, by the assignee in insolvency of the joint and separate estates of Henry A. Davis and Henry C. Hathaway, against the Massachusetts Baptist Convention, a corporation, Ezra F. Pratt, Lizzie E. Pratt, Henry A. Richardson, Viola I. Davis, and Julius Mar-

queze, to set aside alleged fraudulent transfers of a parcel of land in Malden, and for an accounting.

At the hearing, before *Richardson,* J., the following facts were agreed.

On April 25, 1896, an involuntary petition in insolvency was filed in the Insolvency Court for Suffolk County against the defendants Henry A. Davis and Henry C. Hathaway, doing business in Boston under the firm name of Henry A. Davis and Company, and on July 3, 1896, the plaintiff was appointed assignee of the joint and separate estates of Davis and Hathaway.

On August 15, 1894, Davis bought of the defendant Ezra F. Pratt a certain parcel of land in Malden, and on the same day mortgaged the same to the defendant, the Massachusetts Baptist Convention, to secure his note for $5,500, which mortgage was recorded. . On the same day also Davis executed a second mortgage of the premises to Pratt to secure his notes for $1,100, and that mortgage was discharged on August 23, 1895.

On September 6, 1894, Davis executed a third mortgage of the premises to his father, Elzaphan S. Davis, purporting to secure a note of $4,000. This mortgage was subsequently discharged by a deed dated December 7, 1894, and recorded on September 30, 1895. On December 4, 1894, Davis conveyed the premises by quitclaim deed to the defendant Henry A. Richardson, his attorney, but without any consideration, and on the same day Richardson conveyed the premises by quitclaim deed to the defendant Viola I. Davis, who was the wife of Henry A. Davis, but without any consideration from her. On September 27, 1895, Henry A. and Viola I. Davis executed a mortgage of the premises to one Edward H. Lowell, to secure their joint note for $2,500, which mortgage was recorded forthwith, and was discharged on July 7, 1896.

On April 8, 1896, Henry A. and Viola I. Davis executed a third mortgage of the premises to the defendant Marqueze, for $3,000, which mortgage was recorded forthwith.

On September 2, 1896, Henry A. and Viola I. Davis executed a deed of the premises to the defendant Richardson. At all times the insurance on the house upon the premises held by the Massachusetts Baptist Convention was taken out in the name of

Henry A. Davis as owner, and was never assigned to Viola I. Davis or to Richardson, and all payments of interest to the Massachusetts Baptist Convention were made by the check of Henry A. Davis.

The Massachusetts Baptist Convention entered on the premises and filed a certificate of possession on October 8, 1896, and after publishing a notice of the foreclosure sale in a newspaper on October 3, 10, and 17, 1896, sold the premises on October 26, 1896, for $5,800, to the defendant Lizzie E. Pratt, who was the wife of Ezra F. Pratt, who recorded the deed. On the same day Lizzie E. and Ezra F. Pratt joined in a mortgage back to the Massachusetts Baptist Convention to secure a note for $5,500, which mortgage was recorded.

The plaintiff never received actual notice of the foreclosure sale. No petition for leave to sell was ever presented to the Court of Insolvency by the Massachusetts Baptist Convention.

The sale was attended by several parties, and several bids were made. It was announced at the sale by the attorney for the Massachusetts Baptist Convention, that the corporation would take back a mortgage of $5,500 on the property. There were no negotiations between Pratt and the Massachusetts Baptist Convention for the purchase of this property prior to the advertisement of the property at foreclosure sale, and no special terms or agreements were entered into with him. The interest on the mortgage and the taxes were unpaid, and demand for the payment thereof was made on the defendant Richardson, at that time the holder of the record title, and Richardson had actual notice of the time and place of the foreclosure sale.

The defendants Pratt thereafter expended on the premises the sum of $1,193 in changes and repairs, and some time in 1897 exchanged their equity in the premises for certain real estate in Boston. On September 14, 1897, they sold that real estate for $3,052.50 net.

The Pratts had known Davis for more than three years, and during that time had lived within 250 feet of the premises which were mortgaged by Davis to the Massachusetts Baptist Convention, and which had been occupied by Davis as his home up to the time when he left the Commonwealth, as hereinafter stated.

Ezra F. Pratt, in July, 1896, was surety on the recognizance

of Davis in the sum of $1,500 on a charge against the latter of conspiracy to defraud certain persons. Davis was discharged, and immediately left the Commonwealth for New York.

The plaintiff never recorded the assignment in insolvency to him in the registry of deeds for Middlesex County, and did not notify the Pratts and the Massachusetts Baptist Convention of the insolvency of Davis and of his appointment as assignee until after December 1, 1896. The officers and agents of the corporation had no actual knowledge of the insolvency of Davis or of the appointment of the plaintiff as his assignee until after the foreclosure.

Davis returned to Massachusetts some time in December, 1896, and submitted to examination. On December 17, 1896, the plaintiff made demand on Ezra F. Pratt for papers in his possession. These papers were found by one Hinds and delivered to Pratt some time during August, 1896, after the taking possession by Pratt of personal property conveyed to him by Mrs. Davis. Pratt retained them until they were delivered to the plaintiff, on his demand, in January, 1897. Amongst them were deeds and mortgages of this property in Malden. Davis did not file in the Insolvency Court the schedule of assets required by law, and there was no knowledge on the part of the plaintiff of the existence of any rights of Davis or his creditors in the property in question until after he had examined Davis, late in December, 1896, and subsequently received from Pratt the papers pertaining to the title and mortgages on the property, in the following January.

Henry A. Davis, called as a witness by the plaintiff, testified, among other things, as follows:

" *Q.* Do you remember conveying this property to Henry A. Richardson some time in December, 1894? *A.* I remember that my wife did. — *Q.* December, 1894? *A.* Oh, yes, I do remember; I did at that time. — *Q.* Did you receive any payment from Mr. Richardson? *A.* I did not. — *Q.* What was the purpose? *A.* It was one of those cases we all do, simply transferring the property to have it stand in my wife's name instead of my own. — *Q.* So far as you know, nothing was paid by her to Mr. Richardson? *A.* No, sir. — *Q.* In the agreed facts there is a reference to a mortgage to Edward H. Lowell of

Chelsea ; for what was that mortgage given?  A. That was a part of a collateral security given to the Winnisimmet Bank of Chelsea on a loan of $2,500 which I had from him for use in my business. — Q. Was Mr. Lowell connected with that bank? A. He was cashier; yes, sir. — Q. In giving this mortgage to Mr. Lowell, and the subsequent mortgage to Mr. Marqueze, your wife signed that at your request?  A. She did. — Q. She always was willing to have this used in your business whenever you desired?  A. Yes, sir. — Q. In the summer of 1894 were you indebted to Mr. Eberly at all?  A. I was. — Q. To what amount?  A. Well, the amounts varied at times ; I probably owed him continually amounts varying from one to four thousand dollars. — Q. And this was business indebtedness?  A. It was goods purchased. — Q. Have you owed him continuously since that time, more or less?  A. Yes, sir. — Q. What is the least that you have owed him at one time, approximately? A. I don't think I ever owed him less than $2,500. — Q. He appears as one of your creditors to-day?  A. He does."

On cross-examination, the witness testified as follows :

" Q. You say you were indebted to Mr. Eberly; whether or not the debts which you owed him in 1894 were paid subsequently?  A. Well, I never got square with him. — Q. I asked you if the debts you owed him in 1894 were or were not paid? A. I can't answer that question yes or no, because he always held my notes. — Q. What notes did he hold?  A. My own personal notes. — Q. Did he ever give any of them up?  A. As fast as they became due we paid them and they were surrendered. — Q. And that was continued; as they matured you gave new notes and he surrendered the old ones?  A. We paid them all as they became due, and when goods were shipped we gave him more. — Q. You were in condition to pay all your notes as fast as they matured?  A. Well, I did pay them all at that time. — Q. Was it after 1894 you were paying in the regular course of business?  A. I was. — Q. That was all through the year 1894, was it not?  A. As far as I know now. — Q. How soon did it happen you ceased?  A. I had business reverses. — Q. When did it happen?  A. It happened in the early part of 1896. — Q. Whether up to the beginning of 1896 you were insolvent?  A. I don't think I was personally solvent at that time."

The judge made the following findings:

" There was no fraud or collusion between the officers of, or any person acting for, the Massachusetts Baptist Convention in respect to the foreclosure of its mortgage; and none of the allegations of fraud, combination, or conspiracy to cheat the plaintiff, contained in the bill, so far as they refer to the Massachusetts Baptist Convention or its officers, are sustained.

" The corporation had the right to foreclose its mortgage as it did, and sell the property; and all the proceedings in such sale were regular.    The price paid by Mrs. Pratt for the property at said foreclosure sale was not probably, by a thousand or fifteen hundred dollars, the full value of the property at that time; but the interest on the mortgage was overdue, taxes on the estate had not been paid for one or two years, Davis had been indicted for some alleged fraud or crime and had left the State, and there was evidence tending to show that the house was in many respects out of repair.

" The chief evidence tending to show that the property did not bring its full value at the foreclosure sale was that Mrs. Pratt, after a considerable amount of repairs and the payment of taxes, in a few months exchanged her equity for a piece of land in Boston, which she subsequently sold for $3,000; but this alone does not show that her equity over the mortgage now held by the Massachusetts Baptist Convention was worth that sum; she may have sold the land in Boston for more than its market value.

" It was not shown either that at the time the property was conveyed to Mrs. Davis, December 4, 1894, subject to the original mortgage of the Massachusetts Baptist Convention, her husband, Henry A. Davis, was insolvent or contemplating insolvency, or that he then owed debts which existed at the time he went into insolvency. If the estate did not belong to him in law or equity at the time of the commencement of the proceedings in insolvency, or if it was not shown that it had been conveyed to her by her husband through Richardson, in violation of the laws relating to insolvency and insolvent estates, the plaintiff as assignee of Davis cannot claim it.

" The result, as shown by the evidence, is that the Massachusetts Baptist Convention has a valid mortgage, and that the

plaintiff, as assignee of Davis, is not entitled to any profit made by Mrs. Pratt on her purchase and sale of the equity."

A decree was entered, dismissing the bill; and the plaintiff appealed to this court.

*W. R. Bigelow*, (*H. J. Jaquith* with him,) for the plaintiff.

*D. P. Bailey*, for the defendants.

HAMMOND, J.   The conveyances prior to October, 1896, affecting the property, taken in chronological order, were as follows.

The deed of August 15, 1894, from Pratt to Henry A. Davis; the mortgage of the same date from Davis to the Massachusetts Baptist Convention; a subsequent mortgage of the same date from Davis to Pratt (discharged on the records, August 23, 1895); another mortgage of September 6, 1894, from Davis to his father (discharged December 7, 1894); a deed of December 4, 1894, from Davis to Richardson, and a deed of the same date from Richardson to Viola I., the wife of said Davis; a mortgage of April 18, 1896, from Viola and her husband to Marqueze; and a deed of September 2, 1896, from Viola and her husband to said Richardson.

At the time of the foreclosure of the mortgage held by the Massachusetts Baptist Convention, which took place in October, 1896, the record title to the property stood in Richardson, subject to this mortgage and to the mortgage given to Marqueze.

The Massachusetts Baptist Convention sold the premises at public auction to Lizzie E. Pratt, wife of Ezra F. Pratt, and the Pratts gave a mortgage back to the Massachusetts Baptist Convention to secure their note for a part of the purchase money, and this mortgage is still held by the mortgagee.

It is not denied by the plaintiff that the foreclosure proceedings were in due form.

But the plaintiff says that the conveyances of December 4, 1894, by which the record title to the property passed from Henry A. Davis to his wife were without consideration and void as to creditors, and that the conveyance of September 6, 1896, to Richardson was without consideration. It appears from the statement of agreed facts that there was no pecuniary consideration moving from the wife to the husband at the time he caused the title to pass to her. But where a husband conveys land to his wife, the presumption is that it is a gift to her, and, although

the presumption may be rebutted by evidence, we do not find in the facts agreed or in the other evidence presented sufficient evidence to overcome the presumption. It must stand as a gift to the wife, and the only remaining question on this part of the case is whether it is void as against creditors. It does not appear that at the time of the transfer the husband was insolvent or in contemplation of insolvency, or that there were any creditors then existing who have not since been paid whatever at that time was due them. Nor does the evidence warrant the conclusion that the conveyance was made for the purpose of delaying or defrauding creditors, nor does it appear that there was not left in the hands of the husband sufficient to pay his creditors as their claims matured; and he actually did pay until more than a year afterwards.

It is well settled in this Commonwealth that a conveyance of property made on a meritorious consideration as of blood or affection is not *per se* fraudulent as against creditors. This conveyance was made on a meritorious consideration, — the making of provision for a wife. It does not appear either that the grantor was indebted at the time beyond his probable means of payment remaining after the conveyance, or that it did in fact operate to hinder, delay, or defraud creditors, or that he had an actual intent to defraud subsequent creditors; that is, an intent to contract debts and a design to avoid payment of them by the conveyance; and a court is not warranted in finding such fraudulent intent from proof simply that the conveyance was made with a design to settle the property upon the grantor's wife, so that it should not be exposed to the hazards of his future business, or liable for any future debts which he might contract. *Thacher* v. *Phinney,* 7 Allen, 146. *Winchester* v. *Charter,* 12 Allen, 606.

Applying these well known principles we are not satisfied upon the evidence that this transfer to the wife is void as to creditors. Nor do we see in the subsequent transactions any evidence to satisfy us that the property ever thereafter passed to the husband.

Such being the case, the plaintiff has no standing in court to contest the foreclosure proceedings, and the other questions discussed by counsel become immaterial.    *Decree affirmed.*