TUCKER v. CURTIN. In re TUCKER et al. Ex parte TUCKER.

(Circuit Court of Appeals, First Circuit. April 10, 1906.)

No. 594.

1. HUSBAND AND WIFE—GIFT FROM HUSBAND TO WIFE—MASSACHUSETTS STATUTE.

Under Rev. Laws Mass. 1902, c. 153, §§ 1, 3, relating to transfers between husband and wife and the decisions of the Supreme Judicial Court of the state thereunder, a transfer of corporate stocks by a husband to his wife as a gift by surrendering certificates held by him to the corporation which by his direction issues new certificates to the wife is a transfer through a third person, and constitutes a perfect gift, good as against the husband and his subsequent creditors, in the absence of an actual intention to defraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, §§ 250–252.]

2. BANKRUPTCY—LOAN BY WIFE—PROPERTY RECEIVED FROM HUSBAND AS GIFT.

A member of a partnership, while solvent, transferred certain corporate stocks to his wife by way of gift, and she subsequently lent such stocks to his partner, who assigned her as security for their return a seat in an exchange which was in his name. Her husband witnessed the formal instrument executed by his wife and his partner covering the transaction, and in other ways indicated his assent to the loan of the securities by his wife, which loan was throughout in such form as to indicate that they were her absolute property. The stocks were used by the firm, which afterward became bankrupt, and the seat was sold by the trustee. *Held* that, even if the gift had not been originally perfect, it was rendered so by the transfer of the stocks to the partner and the substitution therefor of his obligation and security directly to the wife, under the circumstances described.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 286, 291, 295.]

Aldrich, District, Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts.

For opinion below, see 131 Fed. 647.

John H. Sherburne, Jr. (I. R. Clark on brief), for appellant.
Robert K. Dickerman and John A. Curtin, for appellee.

Before COLT, and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is an appeal against a decree of the District Court for the District of Massachusetts sitting in bankruptcy. The bankrupts constituted a partnership known as "Frederick M. Tucker & Co.," stockbrokers, doing business at Boston, in the state of Massachusetts. Tracy H. Tucker, one of the bankrupt copartners, is the husband of Gertrude F. Tucker, the appellant. All parties resided in Massachusetts during the entire period to which this appeal relates, and the transactions involved were also within that state. There was one other bankrupt copartner, namely, Frederick M. Tucker, also of Boston, the two gentlemen named constituting the bankrupt partnership, which made an assignment for the benefit of its creditors

on May 21, 1903, and was subsequently petitioned into bankruptcy. The record contains no suggestion of insolvency previous to the assignment.

On November 18, 1902, Frederick M. Tucker borrowed of the appellant, Gertrude F. Tucker, certain corporate stocks, which will be referred to more particularly later, and assigned to her a seat in the New York Cotton Exchange as security for the return thereof. The assignment was formal in its nature, and described him as the borrower as well as the owner of the seat in the Exchange. It is very specific in declaring the sole individual obligation of Frederick M. Tucker. The record suggests that the Exchange seat was equitably the property of the partnership, and these proceedings seem to be based on that theory. There is, however, not the slightest indication that at the time of the transaction Mrs. Tucker knew that fact, or had any reason to know it, and she stands unprejudiced by it, and, on the face of the papers, Frederick M. Tucker dealt with it as his own property. Also, the only evidence which we find in regard to the party to whom the shares were loaned is what appears by the assignment itself, and by the testimony of Frederick M. Tucker that Mrs. Tucker loaned them to him, and he "put them into the concern." Therefore the transaction, on the proofs so far as brought to our attention, was a loan of the corporate stocks from Mrs. Tucker to Frederick M. Tucker. Mrs. Tucker's husband, Tracy H. Tucker, witnessed the assignment to her of the Exchange seat. Frederick M. Tucker testifies, and he is not contradicted, that Tracy H. Tucker procured the certificates of the various shares of stock from his wife, and delivered them to him, Frederick, and this at the time the assignment was executed. Thus the husband effectually assented to the transaction.

The present question arises out of the facts that the trustee in bankruptcy sold the Exchange seat free from all liens by an order of court, and that Mrs. Tucker filed a claim to be allowed·out of the proceeds thereof the value of the corporate shares which she loaned as we have described. There is no claim, either pro or con, that any objection was made to the sale, or that Mrs. Tucker is not entitled to the same equity against the proceeds thereof that she had against the seat itself. Her claim was disallowed by the referee, on the ground that the corporate shares were given her by her husband in Massachusetts, so that, as was decided by him, the gift or gifts, as the case may be, were ineffectual as against creditors. The District Court affirmed the order of the referee, so that Mrs. Tucker appealed to us. It may well be observed that the case is not one of a proof of debt by a married woman against the estate of either her husband or his copartnership, but merely an assertion of title to her own separate property.

The record is not absolutely clear as to the circumstances under which Mrs. Tucker received the corporate shares in question, but we think that, as a whole, it sustains what was apparently the view of the learned judge of the District Court. Mrs. Tucker gave no consideration for them. She never had any separate estate of her own belonging to her before she was married, or coming to her in any way afterwards, unless the gift, or gifts, to her of the corporate shares in question had sufficient validity to create one. There was evidently some

conversation before the marriage in reference to a gift to her in connection therewith, but whatever occurred was not sufficient to create what could be called an antenuptial agreement, or a positive agreement of any form. Therefore there was no consideration in that connection such as the law fully recognizes, although probably what was said before the marriage in a certain way led up to her acquisition of the stocks afterwards.

There were two acquisitions, differing as to dates and forms. She loaned Frederick M. Tucker 25 shares of the capital stock of the Amalgamated Copper Company and 40 shares of the preferred capital stock of the United States Steel Corporation. Mrs. Tucker was married on June 26, 1901. At that time her husband was the owner of 25 shares of the stock of the United States Steel Corporation and of the 25 shares of the Amalgamated Copper Company. These came to him from the estate of his grandfather in the form of certificates issued to the former holders, and indorsed by them in blank; and they were in that condition when he was married. Soon after marriage he took out new certificates for both lots in the name of Mrs. Tucker, and delivered them to her. Thus her title to them became in form fully perfected. The remaining 15 shares of the United States Steel Corporation were purchased by her husband on September 11, 1901, and, on purchase, they were transferred directly into her name by the corporation, and a certificate was issued to her, and immediately delivered to her; so that the title thereto never vested in her husband either in form or in fact, unless a vesting was compelled by the law by reason of the existing marriage relations. It is said, although this is not important, that the certificates were subsequently placed in a safety deposit box which was held in the name of Mrs. Tucker, and that she received the dividends and used the money as she saw fit. No question is made that, at the time these gifts were made, they were free from fraud so far as creditors were concerned, and were made in good faith in all respects. Yet it is apparent that no consideration which the law regards as valuable passed therefor from Mrs. Tucker to her husband.

Mrs. Tucker maintains that this case is covered by our opinion in James v. Gray, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321, passed down on July 6, 1904. Neither the question before us in that case nor the opinion involved or disposed of the issue which arises on this appeal. The matters brought to our attention in James v. Gray were strictly limited to the disposition of what we regarded as a part of the wife's separate estate. Starting with a statutory separate estate, we applied the broad rules of equity that, as between husband and wife, the chancellor will follow out and protect such an estate; and that was all. At page 408 of 131 Fed., at page 392 of 65 C. C. A., we stated as follows:

"We find that the real issue presented is whether under the federal bankruptcy statutes, which permit the allowance of equitable claims, a loan by a wife to her husband from property secured to her by the Massachusetts statutes creates an equity in her favor."

Thus we started with the fact that the wife, after coverture, had a separate estate, either at common law or under the rules of equity, or

under the statutes of Massachusetts. Here the dispute is whether she ever had any separate estate, a dispute which James v. Gray does not reach. Where there is a mere gift without any consideration which the law regards as valuable, no such clear equity arises as when the existing estate of a wife is dealt with, unless a third person is brought into the case. Then, if the property is conveyed to him, either in strict trust for the wife or that he may convey it to her, a clear equity arises against him in her behalf, which chancellors everywhere, including those in Massachusetts, admittedly enforce.

The opinions of the learned judge of the District Court declare that, under the statutes of Massachusetts, a gift from a husband to a wife is void; and it is established there that a married woman cannot acquire personal property by a perfect gift from her husband except through a third party. Spelman v. Aldrich, 126 Mass. 113, 117, decided in January, 1870. Spelman v. Aldrich raised an issue between the wife and a subsequent creditor on a state of facts which we will explain later. The opinion did not hold that a gift direct from the husband to the wife is void; but it was to the effect that it may be so far valid as to vest in the wife a right at the death of the husband as against his heirs and executors, invalid, nevertheless, as to his creditors. That this is the settled rule in Massachusetts is made apparent by the cases cited in Marshall v. Jaquith, 134 Mass. 138, 139, 140. Marshall v. Jaquith was between the wife and the husband's administrator, and the wife prevailed; but the authorities cited therein settled the law as we have said.

Although it was declared in some earlier authorities in some parts of New England that the English chancery system in regard to contracts between husband and wife had been created after our ancestors emigrated, and so had not become law on this side of the water, yet there has long existed no difficulty in Massachusetts in this respect, because, in consequence of there being no chancery jurisdiction in its early judicial history, the principles of equity were very largely adopted by the common-law courts. For example, the action for money had and received came in the Massachusetts Bay colonies to represent in no inconsiderable degree equitable rights and equitable remedies. So the common law of Masachusetts early adopted some of the chancery rules about the relations of husband and wife. Stanwood v. Stanwood, 17 Mass. 57, 59. Moreover, there is no difficulty in Massachusetts arising out of any rule relative to subsequent creditors. So far as that is concerned, if the gift to the wife, or any other mere gift, does not prejudice existing creditors, and is not actually intended to defraud future creditors, it is valid so far as any question of that character is concerned. Jaquith v. Massachusetts Baptist Convention, 172 Mass. 439, 52 N. E. 544.

One other difficulty existing at the common law does not exist under the Massachusetts statutes. As to personal property which lies in possession, the possession of the wife was at common law always the possession of the husband. This made a difficulty which was not wholly done away with in England, even in equity. But with reference to matters which lie in action, known as "choses in action," including

shares of corporate stocks, while, at common law, those vesting in the wife before the marriage and those taken in her name from others than her husband after marriage survive to her, even as against her husband's creditors and assignees in bankruptcy, unless reduced into possession during the life of the husband, as shown in Reeves' Domestic Relations (1888) 2, 7, Kent's Commentaries, vol. 2, 135, Addison's Law of Contracts (10th Ed. 1903) 248, 249, and Draper v. Jackson, 16 Mass. 480, yet they were all subject to the control of the husband, creating difficulties in making perfect gifts from him to his wife even as between them. Under the statutes of Massachusetts, however, the wife can take from a stranger a perfect title to personal property, as well as she could at common law to real estate. Rev. Laws 1902, c. 153, § 1. So it comes about that, as conceded by the trustee in this case, the wife, under the statutes of Massachusetts, may take by gift from her husband a perfect title to personal property with the aid of the intervention of a third person.

Section 3 of chapter 153, Rev. Laws 1902, is the provision which especially relates to transfers between husband and wife. It is not necessary that we should cite it at length, but it is plain that it might be so interpreted as, by implication, to prohibit a gift from husband to wife, either directly or indirectly, except so far as specified therein. But its practical construction, so far as this case is concerned, is that Spelman v. Aldrich. and other cases of its class, do not declare gifts which would be valid under the chancery rules to be invalid, unless as against creditors. Wherever it is clear that a gift was intended, and a chose in action has been put in the name of the wife, as in the case at bar, and only executors or distributees have interfered, the gift has been maintained.

We are thus clearly supported in two propositions by the local law of Massachusetts, as declared by the decisions of the Supreme Judicial Court and as conceded at bar. First, under the statutes of Massachusetts, as we have said, the wife may, after marriage, accept a gift of personal property, especially choses in action, which shall be free from the control of her husband; and, second, such a gift, may be free from the control of the husband's creditors, if it comes from strangers or from the husband through the intervention of a third person, the intervention to be of such a character as we will discuss and explain. Such has long been the rule, not only generally where the English language is spoken, but even in Massachusetts, when the third person receives from the husband property held under a strict trust for the benefit of the wife. When such is not the form of the gift, questions as to the form have arisen everywhere, as they do here; and such questions may, perhaps, be answered differently in different jurisdictions, according to the greater or less local anxiety with regard to preventing uncertainties as to titles to goods, and intermixtures thereof, which might operate to the prejudice of creditors and innocent purchasers. It is, however, only a question of the mere form of a gift which is involved in the case before us. Gifts by mere transfer from the husband to the wife are, as we have said, necessarily imperfect at common law, and are not always perfected in equity.

Eversley's Law of the Domestic Relations (2d Ed. 1896) 293. At page 294, however, the author states that a valid gift is accomplished by a transfer by the husband into the wife's name of stock, though previously purchased. This is the settled rule in England. In re Eykyn's Trusts, 6 Ch. D. 115, 118. This does not necessarily mean corporate shares, as in England the word "stock" includes, also, certain public and private obligations, usually known with us as bonds. There is no direct ruling in Massachusetts to the contrary, and the most that can be claimed here is by alleged analogy to Spelman v. Aldrich, 126 Mass. 113, already cited, which related to a deposit in a savings bank. The pith of that decision was that the interposition of a savings bank, under the circumstances of the case, was not such an intervention of a third party as gave the wife a new equity, so that, notwithstanding such interposition, the gift was directly from the husband to the wife, and therefore ineffectual as against the husband's creditors.

We are, however, forced to the conclusion that Spelman v. Aldrich, even if not practically overruled, cannot control us here. First, Spelman v. Aldrich was not a case of transfers of shares of stocks to the wife, requiring the active intervention of corporations in accepting the surrender of the original certificate, and issuing new certificates to the wife. From the instant an old certificate is surrendered with a transfer on it to the wife, the corporation assumes an obligation to her to issue her a new certificate, which obligation lays the basis for a bill in equity by her for specific performance. This obligation may even sustain an action by her at common law in the federal courts. Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; McKee v. Lamon, 159 U. S. 317, 322, 16 Sup. Ct. 11, 40 L. Ed. 165. It is true that the same principle would seem to apply to a savings bank which had received a deposit; and yet, under the circumstances, we would be at liberty, if necessary, to hold that there is a distinction.

Moreover, we are not bound to follow Spelman v. Aldrich, because, even if not overruled, it is plain that the principles therein announced have not been continuously and consistently applied by the Supreme Judicial Court of Massachusetts. We begin with Sweeney v. Boston Five Cent Savings Bank, 116 Mass. 384, 385, where, in an opinion arising out of a suit by the husband against a savings bank to recover a deposit which he had made in the name of his wife, having delivered her the savings bank book, the court said:

"The book is evidence of a contract of the defendant with her"—that is, the wife—"and it appears from the report that this contract was made with his sanction and concurrence."

It was held that the husband's suit could not be maintained.

Brown v. Brown, 174 Mass. 197, 201, 54 N. E. 532, 75 Am. St. Rep. 292, related to a deposit in a savings bank, where the proceeding was in behalf of the administrator against the wife. It is true that the report of the case does not state whether the estate was insolvent, so that the creditors were the real parties in interest, or whether the parties in interest were the distributees. It appears, however, from the reference which the opinion, at page 204 of 174 Mass., page 533

of 51 N. E. (75 Am. St. Rep. 292), makes to Spelman v. Aldrich, and from the following extracts, that the court was discussing the question of a perfect gift, good against creditors. At page 199 of 174 Mass., page 533 of 54 N. E. (75 Am. St. Rep. 292), the opinion observes:

"A husband may give and deliver personal property to a third person, who may straightway give and deliver the property to the wife; and this would be a valid transfer of the property from husband to wife, although the sole purpose of all parties was to make such transfer. But the gift cannot be made directly. * * * If it appears that the title comes to her by such a contract"—that is, through a stranger—"then it is good, if not fraudulent as to creditors, although the only consideration for the contract moves from the husband."

It appeared that the husband saved a considerable portion of his earnings. His habit was to share those savings with his wife, keeping one half for himself, and providing that the other half should go to her as her own money. The wife, as the agent of her husband, received the one-half intended for her, and as his agent delivered it, while it was still his, to the bank, and, still acting as his agent, directed the bank to make a contract with her to deliver a like amount to her; and the bank, taking the money from her as the agent of the husband, did, in compliance with her directions, deliver her in her individual capacity the deposit book made out in her name. These are the facts as stated by the court at pages 198 and 201 of 174 Mass., pages 533, 534 of 54 N. E. (75 Am. St. Rep. 292). If Brown v. Brown does not overrule Spelman v. Aldrich, the distinction it makes is so fine that dealing with certificates of stock, which, by the intervention of the corporations, had been issued to the wife, we are not required to accept Spelman v. Aldrich, rather than Brown v. Brown, as analogous to this case. Moreover, we find nothing in the local decisions of such stable and consistent character as would require us to follow them, even if there were any substantial identity between transactions relating to savings bank deposits and those before us on this appeal. Therefore we find here sufficient intervention by new third parties, in the action of the several corporations whose shares of stock are in question, to establish Mrs. Tucker's title as against the executors, distributees, or creditors of her husband.

In this particular case, however, we find an intervention of a third party, as required by local decisions in Massachusetts, of the most formal and positive character. What we have to deal with here is not merely the identical shares of stock out of which this appeal arose, but the obligation of Frederick M. Tucker under the assignment to Mrs. Tucker of November 18, 1902, of his seat in the New York Cotton Exchange, and the lien arising therefrom. Assuming that Mrs. Tucker's husband had at that date any interest whatever in the shares of corporate stock which he gave her, or that his gift was imperfect in any particular, what he then did made it perfect, and divested him and those claiming under him of any possible interest. As we have shown, the transaction received his assent as though he had formally joined in it. By virtue of it there was completed in Frederick M. Tucker a perfect title to the shares of stock in question, and there was substituted therefor an agreement of Frederick M. Tucker with Mrs. Tucker to account to her for the shares, accompanied with a lien on the

Exchange seat to protect the equity which thus arose in her favor against him. Here was a clear novation by the intervention of Frederick M. Tucker, and, by the consent of all concerned, a new contract between him and Mrs. Tucker, which gave her a clear equity against him and on his seat in the Exchange. Thus there arose a right of action in equity, if not at common law, vesting in Mrs. Tucker, which she could avail herself of without the assistance of her husband; and thus there arose all the rights which would have existed in the event that there had been a formal deed of trust, by virtue of which Frederick M. Tucker accepted the shares, and agreed with her to hold them and account to her for them, or the income thereof. Under these circumstances we see nothing, even if the strictest rules are applied with reference to the intervention of third parties, as stated in what we have cited from Brown v. Brown, which leaves the interest vested in Mrs. Tucker in any possible particular imperfect, whether from the standpoint of her husband or from that of his subsequent creditors, as to whom there is no pretense that any fraud was intended.

The decree of the District Court is reversed; and the case is remanded to that court, with directions to enter a decree in favor of Gertrude F. Tucker, the appellant, and to award her the costs of that court and of appeal. ·

ALDRICH, District Judge (dissenting). In this case a wife seeks to prove a claim, based upon a supposed gift from her husband, against a bankrupt partnership of which her husband is a member.

Under the law of Massachusetts, if the gift in question is established as one passing title to the property from the husband to the wife (a proposition to which I do not assent), the wife cannot enforce a claim in respect to it against a firm of which her husband is a member, either at law, Edwards v. Stevens, 3 Allen (Mass.) 315, or in equity. Fowle v. Torrey, 135 Mass. 87; Bank v. Tyndale, 176 Mass. 547, 57 N. E. 1022, 51 L. R. A. 447; Woodward v. Spurr, 141 Mass. 283, 6 N. E. 521; Clark v. Patterson, 158 Mass. 388, 33 N. E. 589, 35 Am. St. Rep. 498.

If the title passed from the husband to the wife, which I am far from assuming, and if she loaned the stock to Frederick M. Tucker, her claim, under the circumstances and under the assignment, would be against Frederick M. Tucker alone. Clark v. Patterson, 158 Mass. 388, 391, 33 N. E. 589, 35 Am. St. Rep. 498.

The property rights of married women rest upon local law, and if there could be no recovery under the statutes and decisions of Massachusetts, there should be none in the United States courts.

Provable claims under section 63 of the bankrupt law of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447] are such claims as have a legal, or equitable, enforceable status under the local law of the State. It was not the purpose of the bankrupt law to enlarge the rights, or the remedies, of creditors and give them more in the federal courts than they are entitled to have under the state law.

In James v. Gray, 131 Fed. 401, 402, 403, 65 C. C. A. 385, 386, 387, 1 L. R. A. (N. S.) 321, the opinion of the majority proceeded upon the distinct ground that the claim there in question would have no legal or

equitable standing in the courts of Massachusetts, and the majority decision was based upon the supposed existence of a broader equity power in the federal courts. From that view I dissented upon the ground that if there was no property right enforceable under the law of the state, there was nothing here to remedy in any form of proceeding. See Meade v. Beale, Fed. Cas. No. 9,371, opinion by Chief Justice Taney; Lumber Co. v. Ott, 142 U. S. 622, 627, 628, 12 Sup. Ct. 318, 35 L. Ed. 1136; District of Pella v. Beard (C. C.) 83 Fed. 5, 15–16.

The general rule is stated by Pomeroy (Pomeroy's Equity Jurisprudence [Ed. 1881] § 297) as one which must constantly be borne in mind:

"Since the original jurisdiction of the United States courts, especially of the circuit courts, in large measure depends upon the state citizenship of the litigant parties as its sole basis, it follows that in most cases of ordinary controversies—in all those which do not directly arise under statutes of Congress or provisions of the United States Constitution—the subject-matter of the suit, the primary rights, interests, or estates to be maintained and protected, are created and regulated by state laws alone."

It is further observed by the same author that while the equitable jurisdiction of the national courts and their power to entertain suits and grant remedies, derived from the Constitution and the laws of the United States, remain unabridged by any state legislation, on the other hand, the primary rights, interests, and estates which are dealt with in such suits and are protected by such remedies, are within the scope of state authority, and may be altered, enlarged, or restricted by state laws, and the notes illustrate the proposition by referring to the rights of married women as something to be regulated by local law.

I do not understand that direct gifts from a husband to a wife are valid and enforceable by the wife in the courts of Massachusetts, either as a claim direct against the husband or as a claim against a firm of which he is a member. In Spelman v. Aldrich, 126 Mass. 113, 117, it is said that:

"A married woman cannot acquire property to be held as her sole and separate property by gift from her husband. Gen. St. 1860, c. 108, § 10. Though such a gift may be so far valid as to give the wife a right to the property at the death of the husband, as against his heirs or executors, it is invalid as to his creditors. Property thus given remains the property of the husband during his life, and may be demanded by him or attached by his creditors."

I do not understand that Brown v. Brown, 174 Mass. 197, 54 N. E. 532, 75 Am. St. Rep. 292, which was a case simply presenting questions of estate administration based upon rights as between husband and wife, and therefore in no way involving creditor rights in an insolvency situation, at all questions or qualifies the law declared in Spelman v. Aldrich. On the contrary, while distinguishing Spelman v. Aldrich from the case then under consideration, it not only expressly recognizes the binding force of the rule of that case as to direct gifts, but, at page 199, in stating the rule as to gifts which undertake to pass property from the husband to the wife through the agency of a third party, far from accepting such a situation as creating a perfect gift good against creditors, expressly makes the validity of indirect gifts subject to the important qualification "if not fraudulent as to creditors."

It seems to me that in a local creditor situation, like that involved in the proof, and allowance of contemporaneous claims in bankruptcy, that a wife's claim based upon a transaction with a bankrupt husband, like the one in question, though not assailed by proof of actual fraud, is in contemplation of Massachusetts law constructively fraudulent as to creditors, because the recognition of such a gift would be giving an effective status to a claim not enforceable against the husband or his assets to which the creditor interests attach under the local law of the state.

In this case the wife had no separate property or independent estate, and Judge Lowell finding the facts in the District Court (131 Fed. 647) in a careful opinion, supplemented by a further opinion not reported, treated the transaction as one involving a direct and pure gift from the husband to the wife and as void under the statutes of Massachusetts; and, while the majority opinion here treats the gift as one accomplished through the instrumentality of a third party, it accepts the situation as one not involving the separate estate of the wife, the transaction as one not involving consideration, and the claim of the wife as one depending upon the gift or gifts from her husband. In my view the stock transaction in question does not warrant the third party assumption. The gift was direct from the husband to the wife, and at the time of the pretended loan to Frederick M. Tucker the wife had no title which she could transfer to him by loan or otherwise. The certificates indorsed in blank were in the possession of the husband as his property, and were filled out and delivered to the wife by the husband as a direct gift. If the transaction was a valid one in contemplation of law, the title passed then and there, and the mere formal insertion, without consideration by the transfer agent of the corporation, of the wife's name in certificates relating to shares of stock owned and in the possession of the husband, which he intended to give to the wife without consideration, in no legal sense constituted a case of the receipt of property by a wife from a stranger within the meaning of section 1, c. 153 (1902), of the Revised Laws of Massachusetts, nor did it in any substantial sense constitute a transfer of the title through a third party wihin the meaning of the Massachusetts decisions, and especially that of Brown v. Brown, 174 Mass. 197, 54 N. E. 532, 75 Am. St. Rep. 292, where there was a contract direct between the bank and the wife, in which the bank, through a bankbook in her name, engaged to deliver money actually in the bank at the time the contract was made.

The possession of Mrs. Tucker was merely nominal and under circumstances which at least create suspicions of a cover and of an entirely ficticious transaction. The certificates were at once indorsed by her in blank and returned to the husband, who passed them to Frederick M. Tucker for the use of the firm, and the transaction of the assignment of the Stock Exchange seat, though nominally in the wife's name, was really a transaction between Frederick M. Tucker and Tracy Tucker, the actual owner.

In Jaquith v. Massachusetts Baptist Convention, 172 Mass. 439, 52 N. E. 544, there was a solemn conveyance by deed from the husband

to a third party, who, in turn, conveyed to the wife. The proceeding was not by the wife to enforce a contract with her husband, and so was not within the prohibition of section 2, c. 153, of the Revised Laws of 1902, as construed by the Massachusetts courts. There the suit was by an assignee in insolvency to vacate a judgment of foreclosure of a mortgage upon the property given by the husband and wife to secure the husband's creditors, and thus it in no way presented the questions involved here.

I agree with the reasoning of Judge Lowell in the District Court that a decision sustaining the claim of Mrs. Tucker in this case would make altogether inoperative the laws of Massachusetts governing the relations of husband and wife; and the effect would be to establish two rules of law in Massachusetts as to local business dealings. It would establish a substantive right in behalf of the wife in respect to gifts from her husband, which does not exist under the laws of Massachusetts. Giving such a claim an effective status would be in fraud of creditors, because it would sweep out of the estate a certain amount of asset which would otherwise, and according to their rights under the local law, be distributed among them.

In this case there is nothing in the transaction or the questionable possession of the wife which, either upon grounds of sanctity of contract or upon equitable considerations, requires this claim to be upheld against actual creditors for value, and a decision giving the claim of Mrs. Tucker an enforceable status would go far beyond what was held in James v. Gray, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321, in the direction of establishing within a certain domain two sets of law, or two measures of equity, respecting property rights. In that case I gave the reasons for my dissent at considerable length. I must adhere to the position there taken, and I refer to my dissent in that case as the ground for not concurring in the majority opinion here.