## In re PERKINS.

(District Court, D. Maine. July 24, 1907.)

No. 134.

BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD UNDER CONDITIONAL SALE.

A bankrupt, who was a dealer in wagons in Maine, bought certain wagons under contracts providing that the title should remain in the seller until they were fully paid for. Such contracts were not recorded in the town where the bankrupt resided, and it was understood between the parties that the wagons might be sold by him in the usual course of his business without restriction. Rev. St. Me. c. 113, § 5, provides that "no agreement that personal property bargained and delivered to another shall remain the property of the seller till paid for is valid unless the same is in writing and signed by the person to be bound thereby," and that, when so made and signed, such agreement "shall not be valid except as between the original parties thereto unless it is recorded in the office of the clerk of the town in which the purchaser resides at the time of the purchase." *Held*, that both under such statute and Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], such contracts were fraudulent and ineffective to prevent the title to such wagons as remained in possession of the bankrupt at the time of his bankruptcy from passing to his trustee, although they were not fully paid for.

In Bankruptcy. On certificate from referee.

W. J. Fowler, for W. A. Patterson.

R. V. Jewett, for Ernest E. Higgins, Trustee.

Eugene C. Donworth, referee.

HALE, District Judge. This case comes before the court upon the following certificate of Eugene C. Donworth, Esquire, referee in bankruptcy:

"I, Eugene C. Donworth, one of the referees of said court in bankruptcy, do certify that in the course of the proceedings in said cause before me, the following question arose pertinent to said proceedings:

"Trustee has petitioned for authority to sell free from all incumbrances certain wagons claimed as part of bankrupt estate; and W. A. Patterson Company petitions that said wagons be turned over to it as its property, because of the existence of a conditional sale upon which wagons were bought and which was never recorded in town where bankrupt lived.

"Referee dismissed petition of W. A. Patterson Co. and ordered that wagons are property of trustee free from all incumbrances, and W. A. Patterson Company have petitioned for review.

"The referee's opinion, the testimony, the finding of fact and all papers in the case are sent up; and said question and decision is certified to the judge for his opinion thereon."

In the course of his opinion the referee makes a finding of facts which is sufficient for the decision of the case:

"That Perkins ordered through an agent of W. A. Patterson Company (hereafter called the claimant) on October 27, 1904, a number of wagons, eight of those in dispute being among the number, upon a blank form executed in triplicate and signed by bankrupt, the blank form containing these (printed) terms: 'Prices quoted are for goods at factory; all remittances should be made to manufacturers. Title to goods shipped on this order or any subsequent order is to remain in the manufacturers till paid for in money, and should anything occur to affect my commercial standing, or should I become insolvent, any amount still unpaid shall immediately become due and it is agreed and understood that the manufacturers have the right to take possession of the goods.' 'Terms (in writing) notes, due ⅓ July 1, 1905; ⅓ Aug. 1, 1905; ⅓ Sept. 1, 1905.'

"That on or about January 27, 1905, all the wagons on the order were shipped and afterward received by Perkins, and on or about Feb. 11, 1905, Perkins, at the request of the claimant, executed and delivered to claimant three notes for $404 each, payable, respectively, July 1, 1905, August 1, 1905, September 1, 1905. That the July note was paid in full. The August note was retired by Perkins paying one-half cash and giving a new note for $200. The September note was retired by Perkins paying one-fourth cash and giving two notes payable in three and four months, respectively, for $150 each.

"That Perkins supposed and intended that the several notes should be given and accepted in payment for the wagons, but that claimant did not suppose and intend them as such.

"That on or about July 8, 1905, Perkins ordered, by letter, the wagon marked 'No. 11 top buggy,' valued at $75, which he subsequently received. Nothing was said in this letter regarding terms.

"That it was intended both by claimant and Perkins that the wagons ordered and shipped should become part of Perkins' stock in trade, and should be sold by him in the regular course of business to purchasers, free from all incumbrances or claims of claimant, and without limitation by claimant as to purchasers or terms.

"That all the wagons ordered of claimant by Perkins were so sold before bankruptcy, with the exception of the nine claimed in the petition.

"That Perkins resided in Hampden, in said district, at the time his order was given and continues to so reside; but during the past ten years up to November 18, 1905, he has carried on a large business in storing and buying and selling wagons and supplies at Calais, in said district.

"That the order given by Perkins to claimant was recorded in said Calais on September 29, 1905, but never in Hampden.

"That Perkins was adjudicated bankrupt on November 18, 1905, and that petitioner, Ernest E. Higgins, is the duly qualified trustee in bankruptcy of said estate.

"That claimant has never taken possession, either from Perkins or from trustee, of the wagons ordered by Perkins, or of any of them.

"That said nine wagons are in the custody and possession of said trustee, and are part of said bankrupt estate, unless, under the terms of the order given by Perkins to claimant, the latter is entitled to them.

"That the sum of seven hundred and twelve dollars was paid by Perkins to claimant on said order, and the several notes given by Perkins and herewith exhibited are unpaid."

Section 70 of the present bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) provides that the title of the bankrupt shall vest in the trustee to all "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

In the case in Re Garcewich, 115 Fed. 87, 53 C. C. A. 510, the Circuit Court of Appeals for the Second Circuit held that where goods were sold to the bankrupt on credit, and with the understanding that the title to such of them as should not be sold by them should

remain in the vendor until the payment of the purchase price, the title thereto vests in the trustee. In speaking for the Circuit Court of Appeals in that case Judge Wallace said:

"It is the settled law of this state that personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title by express agreement remain in the vendor until the payment of the purchase price. In such a case the payment is strictly a condition precedent, and, until the performance, the title does not vest in the buyer. It is one of the exceptional cases in which the law tolerates the separation of the apparent from the real ownership of chattels when the honesty of the transaction is made to appear. But, when the purpose for which the possession of the property is delivered is inconsistent with the continued ownership of the vendor, the transaction will be presumed fraudulent as against purchasers and creditors. The transaction will be deemed merely colorable, and the title to have been vested absolutely in the buyer. Ludden v. Hazen, 31 Barb. (N. Y.) 650; Frank v. Batten, 49 Hun, 91, 1 N. Y. Supp. 705; Bonesteel v. Flack, 41 Barb. (N. Y.) 435. When the property is delivered to the vendee for consumption or sale, or to be dealt with in any way inconsistent with the ownership of the seller, or so as to destroy his lien or right of property, the transaction cannot be upheld as a conditional sale, and is a fraud upon the creditors of the vendee. Even in the case of a chattel mortgage, when it is understood between the mortgagor and the mortgagee that the mortgagor may sell the chattels in his business, and use the proceeds, the transaction is fraudulent in law as against the creditors of the mortgagor. Such an arrangement, if expressed in the instrument, defeats its essential nature and qualities as a mortgage, so that, in a legal sense, it is not a security, but merely the expression of a confidence by the mortgagee in the mortgagor; and, if made, but not expressed in the instrument, is equally vicious, if not more suggestive of a fraudulent purpose."

In the above case Judge Wallace places the conclusion of the court upon the proposition that, when property is delivered to a vendee to be dealt with in any way inconsistent with the ownership of the seller, the transaction must be a fraud upon the creditors of the vendee.

In Flint Wagon Works v. John S. Buttles, Trustee, 153 Fed. 932, in a very comprehensive and well-considered opinion, as yet unpublished, Judge Martin passes upon a case, the facts in which are very similar to the case at bar. He says:

"The whole trend of the authorities is that a lien or mortgage placed upon goods obtained for sale by the vendee, and unrecorded, is a secret arrangement, is in law a fraud upon creditors, and cannot be enforced against a trustee of such a vendee who subsequently becomes a bankrupt. * * * In the case at bar there was an attempted lien, absolutely secret, not even known to the vendee, and never intended to be brought to light unless the vendee should become insolvent. The vendee was put in possession of a large number of wagons, of which he was apparently the absolute owner. There was a secret attempt on the part of the vendor, should the vendee succeed in getting credit by having about him a large amount of unincumbered property and should thereafter be unable to pay debts so incurred, to make time notes, given for said property, immediately due and payable, and the vendee deliver to the vendor all goods remaining unsold, and all the time they should remain in the hands of the vendor."

Judge Martin places his decision upon the authority of In re Garcewich, supra.

In the case In re Shaw (D. C.) 146 Fed. 273:

"A bankrupt, who operated a tannery in Maine, some two years prior to the bankruptcy, executed a chattel mortgage to a creditor on all the stock and materials at his tannery and such as should thereafter be acquired. By

agreement the mortgage was not recorded, nor was any possession ever taken thereunder. Subsequently the mortgagee made a mortgage to secure an indebtedness to a bank on certain bark at the bankrupt's tannery, to which it had no title unless by virtue of its own mortgage. Also, by agreement, this mortgage was not recorded, but an attempted delivery of possession was made by going to the tannery, scaling the bark, and placing on each pile a small board, having thereon a letter of the alphabet, and then formally delivering each pile to the agent of the bank, who appointed the bankrupt its custodian. There was no visible change of possession, and the bankrupt's trustee took possession of and sold the bark as assets of his estate."

This court held:

"That under Rev. St. Me. c. 93, § 1, which provides that 'no mortgage of personal property is valid against any other person than the parties thereto unless possession of such property is delivered to and retained by the mortgagee or the mortgage is recorded,' there was no such delivery and retention of possession as to validate either mortgage, but that both were fraudulent as attempted secret liens, and void as against the bankrupt's trustee."

In that case the court took into consideration the fact that there was an express agreement not to record the mortgage, and held that such agreement was a circumstance tending to show actual fraud. The court said:

"The testimony tends to show that, at the time of the giving of the mortgage to the bank, Shaw was insolvent, that there was an obvious attempt to make the delivery to the mortgagee secret rather than open, and that there was a distinct and affirmative understanding that the mortgage was not to be recorded. The case discloses a want of good faith, resulting in an actual fraud upon the general creditors."

Rev. St. Me. c. 113, § 5, provides that:

"No agreement that personal property bargained and delivered to another, shall remain the property of the seller till paid for, is valid unless the same is in writing and signed by the person to be bound thereby. And when so made and signed, whether said agreement is, or is called a note, lease. conditional sale, purchase on instalments, or by any other name, and in whatever form it may be, it shall not be valid, except as between the original parties thereto, unless it is recorded in the office of the clerk of the town in which the purchaser resides at the time of the purchase."

The facts in the case at bar disclose that the nonrecording of a "conditional sales contract" was not a mere matter of omission. It was in pursuance of a distinct plan that there should be no record of this contract; but that the wagons should appear to be the property of the vendee. The lien was never attempted to be brought to light until after the failure of the bankrupt and his voluntary assignment. The vendee was put into possession of the wagons, of which he was apparently the absolute owner.

In the Shaw Case, supra, the court cites from Rogers v. Page, 140 Fed. 596, 72 C. C. A. 164, in which, in speaking for the Circuit Court of Appeals for the Sixth Circuit, Judge Lurton said:

"The fact that this was a secret lien gave this property the appearance of being unincumbered, and was the moving inducement of some of his existing creditors to grant delay by extension and renewal. * * * But there is a distinction between a mere negligent failure to record a mortgage or deed and a deliberate agreement to do so, although the mere fact of an agreement to withhold from record is not of itself such evidence of a fraudulent purpose as to constitute fraud in law. It is, however, a circumstance constitut-

ing more or less cogent evidence of a want of good faith, according to the particular situation of the parties, and the intent as indicated by all of the facts and circumstances of the particular case."

The facts do not bring this case within the law of Hewitt v. Berlin Machine Works, 194 U. S. 297, 24 Sup. Ct. 690, 48 L. Ed. 986, and York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; nor within the recent decisions in this circuit. James v. Gray, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321; Tucker v. Curtin, 148 Fed. 929, 78 C. C. A. 557.

Nor is the case within the law of the very recent case of Loveland, Petitioner, in the Matter of Warren H. Littlefield, Bankrupt, and Alfred W. Putnam, Trustee, Appellant, v. Alice H. Loveland, Petitioner, 155 Fed. 838, in which case, in speaking for the Court of Appeals in this circuit, Judge Lowell remaks:

"Where the trustee in bankruptcy and the transferee of the bankrupt both claim certain property which once belonged to the bankrupt, it may be difficult to decide how far the title to the property in question depends upon the state law which determines the effect of the bankrupt's conveyance, and how far upon the bankrupt law which declares what property the trustee shall take."

He also cites York Manufacturing Co. v. Cassell, supra, in which the decision is based somewhat upon Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 660, 49 L. Ed. 577. In that case, in speaking for the Supreme Court, Mr. Justice Peckham said:

"Under the present bankrupt act the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act."

But the case at bar is not "unaffected by fraud." The facts bring it distinctly within the rule given by Judge Wallace in Re Garcewich, supra. In coming to a conclusion, the court gets little assistance from the line of cases which hold that, in equity, for certain purposes, the trustee merely stands in the shoes of the bankrupt, and takes all property subject to valid liens; for the case at bar does not disclose a "valid lien," but rather an attempted lien which is invalid and fraudulent.

In reference to the last wagon ordered by the bankrupt in July, 1905, the referee finds a different state of facts from that in relation to the other eight wagons. From the facts which he has found, however, I agree with his conclusion touching this last wagon, as I do also with his decision as to the others.

The finding of the referee in his report is confirmed.

It is ordered that all the wagons named in the petition be sold by the trustee free from all liens and incumbrances.